886 F.2d 268
 PAUL, JOHNSON, ALSTON & HUNT, Special Counsel to Plaintiff
Reynaldo Graulty, Appellant,
v.
Reynaldo D. GRAULTY, Trustee, Trustee in Reorganization for
WPMK Corporation, and Paradise Palms Vacation
Club; James Lombardi, Appellees.
 No. 88-15364.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 27, 1989.
Decided Sept. 27, 1989.
As Amended Dec. 14, 1989.
 
 Paul Alston, Paul, Johnson, Alston & Hunt, Honolulu, Hawaii, for appellant.
 Robert J. Faris, Gelber & Gelber, Honolulu, Hawaii, for appellees.
 Appeal from the United States District Court for the District of Hawaii.
 Before TANG, REINHARDT and WIGGINS, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 The law firm of Paul, Johnson, Alston & Hunt ("PJAH") timely appeals an order of the district court awarding it roughly $855,000 less than the amount of fees it had requested as compensation for creating a "common fund." PJAH contends that the district court misconstrued the common fund doctrine so that the fee awarded is unreasonable. We agree, and therefore we vacate the district court's order and remand for another fee determination.
 
 
 2
 * This case evolves from the separate, yet related filings for bankruptcy by Paradise Palms Vacation Club, a non-profit association of purchasers of time-share condominium apartments, and the WPMK Corporation, a time-share development company. The bankruptcy court appointed separate trustees to oversee the affairs of each of these insolvent entities. Thereafter the bankruptcy court approved a settlement agreement that resolved any conflicts between the two bankrupt estates and that authorized a single trustee, Reynaldo Graulty (the "Trustee"), to administer any claims common to both. The Trustee then entered into a contingency fee agreement with PJAH for its representation of the two estates in an adversary proceeding against those allegedly responsible for their financial ruin. The bankruptcy court approved that agreement, which, depending on the stage of the proceedings, compensated PJAH as much as one-third of all the funds recovered on behalf of the estates, plus PJAH's reasonable expenses.
 
 
 3
 PJAH expended considerable time and effort in pursuing the estates' claims. At one point, however, Judge King, who presided over the adversary proceedings, ruled that many of the estates' claims for damages were personal rights belonging to those who had purchased time-share memberships. PJAH pressed the defendants for a settlement of the estates' valid claims, but the defendants refused to agree to a settlement without a simultaneous release from the purchasers of time-share memberships. A class action was then commenced to represent the interests of these parties. Almost immediately thereafter some of the major defendants, the Trustee, and the proposed class representatives agreed to a settlement releasing the defendants from all claims for roughly $4,736,000. The Trustee and the proposed class representative separately agreed to deduct from this settlement amount all fees and expenses, including those of PJAH, and then to divide the net proceeds of the settlement so that the class received 70 percent and the estates 30 percent. The division of the settlement amount was specifically tailored so that the class would bear a proportionate share of the estates' costs of litigation.
 
 
 4
 The district court, Judge Pence presiding, subsequently approved the certification of the class and the separate settlement agreements. At the same time, Judge Pence considered applications for compensation submitted by PJAH and the other parties' representatives. PJAH requested fees of roughly $1,600,000, an amount equal to one-third of the gross settlement, plus its expenses of approximately $200,000. At first the district court was inclined to abide strictly by PJAH's contingency fee agreement with the Trustee by awarding it $475,000--an amount roughly equivalent to one-third of the estates' recovery--plus expenses of around $200,000. PJAH argued, however, that because it had conferred a substantial benefit on the class, it had satisfied the "common fund" doctrine and was therefore entitled to an award measured by the total settlement amount.
 
 
 5
 Judge Pence was reluctant to characterize the case as falling within the common fund doctrine. Still, after reconsideration, he opted in favor of awarding PJAH 19.5 percent of the gross settlement amount, a figure which was to include PJAH's costs. Judge Pence found this compensation, amounting to about $923,000, to be fair because PJAH's "outstanding" work "materially benefited" the class by permitting its representative to do substantially less work in securing a settlement for the class. At the same time, however, Judge Pence felt constrained by Judge King's earlier ruling that many of the estates' claims were personal rights belonging to members of the class. He therefore adamantly opposed PJAH's invitation to base the percentage of the award on one-third of the full settlement amount rather than the court's figure of 19.5 percent. Still dissatisfied, PJAH appeals the district court's order, which was certified as final pursuant to Fed.R.Civ.P. 54(b). We have jurisdiction under 28 U.S.C. Sec. 1291 (1982).
 
 II
 
 6
 The amount of attorney fees awarded by a district court is reviewed for an abuse of discretion. Quesada v. Thomason, 850 F.2d 537, 538 (9th Cir.1988). A district court abuses its discretion if its decision is based on an erroneous conclusion of law or if the record contains no evidence on which it rationally could have based its decision. In re Hill, 775 F.2d 1037, 1040 (9th Cir.1985).
 
 III
 
 7
 According to the terms of the contingency fee agreement between PJAH and the Trustee, PJAH is entitled to one-third of any recovery made on behalf of the two estates plus PJAH's reasonable expenses. The parties more or less agree that PJAH's one-third share of the estates' recovery of thirty percent of the settlement amount is fairly calculated to be $475,000. The parties also agree that PJAH's reasonable expenses amounted to roughly $200,000. According to the specific terms of the contingency fee agreement, then, PJAH would be entitled to compensation in the amount of $675,000. But the district court actually awarded PJAH almost $250,000 more than this amount. Since ordinarily every litigant is supposed to bear the burden of his own litigation expenses, see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257-58, 95 S.Ct. 1612, 1621-22, 44 L.Ed.2d 141 (1975), the district court's additional award is warranted only if PJAH "recover[ed] a common fund for the benefit of persons other than himself or his client...." Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980).
 
 
 8
 Although the common fund doctrine does not permit the shifting of the burden of the litigation expenses to the losing party, it does permit the burden to be shared among those who are benefited by the litigant's efforts. See Brown v. Phillips Petroleum Co., 838 F.2d 451, 454 (10th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); Vincent v. Hughes Air West, Inc., 557 F.2d 759, 770 (9th Cir.1977). "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." Van Gemert, 444 U.S. at 478, 100 S.Ct. at 749. Such an inequitable result is easily avoided if a court has control over the fund--even one created pursuant to a settlement, as here, see City of Klawock v. Gustafson, 585 F.2d 428, 431 (9th Cir.1978)--and assesses the litigation expenses against the entire fund so that the burden is spread proportionally among those who have benefited. See Van Gemert, 444 U.S. at 478, 100 S.Ct. at 749. The common fund doctrine is properly applied, however, only if "(1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." Hill, 775 F.2d at 1041 (9th Cir.1985).
 
 
 9
 These criteria are easily met where, as here, "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum [settlement] recovered on his behalf." Van Gemert, 444 U.S. at 479, 100 S.Ct. at 749. Judge King's earlier ruling in the adversarial proceedings made clear that a large portion of the estates' claims belonged to a class later composed of those who had purchased time-share memberships. While thirty percent of the settlement amount is strictly attributed to the claims of the two estates, seventy percent of the settlement amount can be traced to the claims of members of this class. Furthermore, according to Judge Pence, the net settlement amount is attributed almost entirely to the efforts of PJAH. Finally, "[a]lthough the value of the benefit [conferred by PJAH] to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery." Id. Accordingly, the common fund doctrine properly applies to seventy percent of the net recovery effected by PJAH.
 
 
 10
 What effect does application of the common fund doctrine have on the ultimate fee to be awarded PJAH? It is true that the fundamental purpose of the common fund doctrine is to spread the burden of a party's litigation expenses among those who are benefited, and that this fundamental purpose was satisfied here by the terms of the settlement agreement itself. PJAH's fees, which the estates owed under the contingency fee agreement, was to be reduced from the gross settlement amount for the specific purpose of having the class bear its fair proportion of the costs of obtaining the benefit of PJAH's services. But merely sharing a litigant's costs of litigation is deemed insufficient under the common fund doctrine. Since the Supreme Court's 1885 decision in Central Railroad & Banking Co. of Ga. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. See Vincent, 557 F.2d at 769-70 (citing Dawson, Lawyers and Involuntary Clients: Attorney Fees from Funds, 87 Harv.L.Rev. 1597, 1603-04 (1974)). The amount of such a reward is that which is deemed "reasonable" under the circumstances.
 
 
 11
 Here, Judge Pence awarded PJAH 19.5 percent of the gross settlement amount, which equals around $923,000 in total compensation. Again, PJAH's compensation for the estates' 30 percent share of the net settlement amount is governed by the parties' contingency fee agreement. Including fees and expenses, that amount roughly equals $675,000. By subtracting that figure from the total amount awarded by Judge Pence, we conclude that PJAH received a reward of just less than $250,000 for creating a common fund consisting of the remaining 70 percent of the gross settlement amount. This reward represents a paltry seven percent of the common fund that was created, according to Judge Pence, through the efforts of PJAH. We consider this figure to be too low and therefore an unreasonable reward.
 
 
 12
 We leave to the district court the task of determining what would be reasonable compensation for creating this common fund, but we add the following advice. A task force commissioned by the Third Circuit has recommended that compensation for creating common funds be calculated by a percentage of the funds created. See Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 254-59 (1985); see also Blum v. Stenson, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984) (noting that the percentage basis method is grounded in tradition and therefore an acceptable way of calculating the fee award). This method stands in contrast to other courts who apply the "lodestar method," which calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation. See Skelton v. General Motors Corp., 860 F.2d 250, 255 (7th Cir.1988) (lodestar enhanced for risk); see also Bebchick v. Washington Metro. Area Transit Comm'n, 805 F.2d 396, 409 (D.C.Cir.1986) (lodestar enhanced to account for contingency of a common fund case); cf. Brown, 838 F.2d at 454-56 (10th Cir.) (fee calculated by percentage method deemed reasonable if consistent with lodestar coupled with any enhancements), cert. denied, --- U.S. ----, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). We believe that either method may, depending upon the circumstances, have its place in determining what would be reasonable compensation for creating a common fund. Cf. Rothfarb v. Hambrecht, 649 F.Supp. 183, 238 (N.D.Cal.1986) (applying lodestar method because, in court's view, the percentage method is ordinarily better only if the fee can be set in advance of creating the fund). Under the circumstances here, however, we believe that the percentage method is better. Because 30 percent of the gross settlement amount is attributed to the estates' claims, it would be impractical, if not impossible, for the district court to determine the number of hours expended by PJAH in creating a common fund that consists of the remaining 70 percent of the gross settlement amount.
 
 
 13
 The sole remaining issue is what percentage of the common fund would provide PJAH reasonable compensation. The answer to that question, of course, depends on the individual circumstances of this case with which the district court is more familiar than we are. Ordinarily, however, such fee awards range from 20 percent to 30 percent of the fund created. We note with approval that one court has concluded that the "bench mark" percentage for the fee award should be 25 percent. See Mashburn v. National Healthcare, Inc., 684 F.Supp. 679, 692 (M.D.Ala.1988). That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case. If such an adjustment is warranted, however, we caution that it must be made clear by the district court how it arrives at the figure ultimately awarded. Cf. Quesada, 850 F.2d at 539 (9th Cir.1988) (in applying lodestar analysis, a court must articulate with sufficient clarity the manner in which it reaches its fee determination).
 
 IV
 
 14
 In summary, PJAH is entitled to a fee award calculated as follows. PJAH is entitled to one-third of 30 percent of the settlement amount, plus its reasonable expenses, as provided for in its contingency fee agreement with the Trustee. PJAH is also entitled to a "reasonable percentage" of the remaining 70 percent of the settlement amount as a reward for creating a common fund. We leave to the district court the task of determining what this reasonable percentage should be. Nevertheless, the district court should take note that 25 percent has been a proper benchmark figure, which it can then adjust upward or downward to fit the individual circumstances of this case. Such an adjustment, however, must be accompanied by a reasonable explanation of why the benchmark is unreasonable under the circumstances.
 
 
 15
 Paul, Johnson, Alston & Hunt is entitled to interest on the fees ultimately awarded. On remand, the district court shall determine that amount.
 
 
 16
 REVERSED and REMANDED for another fee determination.