**In re WASHINGTON PUBLIC POWER SUPPLY SYSTEM SECURITIES LITIGATION.**

**All Cases**

**No. MDL–551.**

United States District Court, D. Arizona.

Sept. 6, 1991.

Paul M. Bernstein, Chairperson, Bernstein, Litowitz, Berger & Grossmann, New York City, for plaintiff Henry Puchall.

Melvyn I. Weiss, Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, for plaintiff Joseph Harris.

Michael J. Meehan, Molloy, Jones & Donahue, P.C., Tucson, Ariz., for class plaintiffs.

Richard W. Clary, Cravath, Swaine & Moore, New York City, Michael Mines, ex-officio, Bells, Patterson & Mines, Seattle, Wash., H. Michael Clyde, Brown & Bain, Phoenix, Ariz., and Harold R. Tyler, Jr., Patterson, Belknapp, Webb & Tyler, New York City, for plaintiff Chemical Bank.

James R. Irwin, Shidler, McBroom, Gates & Lucas, Seattle, Wash., for plaintiff Frankel Estate.

James J. Hagan, Simpson Thacher & Bartlett, New York City, East Coast Liaison Counsel for defendants.

Albert R. Malanca, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Tacoma, Wash., West Coast Liaison Counsel for defendants.

Michael E. Kipling, Graham & Dunn, Seattle, Wash., for Various Class plaintiffs:

Allan K. Peckel, New York City, for plaintiffs David Gold and Marvin Frankel.

Jay Robert Stiefel, Berger & Montague, P.C., Philadelphia, Pa., for plaintiff Rosalyn Mirotznik.

Klari Neuwelt, Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff Morris Massry.

Lawrence A. Sucharow, Goodkind, Labaton & Rudoff, Robert Schachter, Zwerling, Schachter & Zwerling, New York City, for plaintiff Paul J. Bonseigneur.

Gerald Rodos, Barrack, Rodos & Bacine, Philadelphia, Pa., for plaintiff Dr. Howard Sheldon.

Samuel P. Sporn, Schoengold & Sporn, P.C., New York City, for plaintiff Jack Schroeder.

Paul F. Bennett, David B. Gold, P.C., San Francisco, Cal., Stephen P. Hoffman, Pomerantz, Levy, Haudek, Block & Grossman, New York City, for plaintiff Leonard Laub.

Bruce K. Cohen, Meredith & Cohen, P.C., Philadelphia, Pa., for plaintiffs Louis Brazen and 776 Broadway.

Daniel W. Krasner, Wolf, Haldenstein, Alder, Freeman & Herz, New York City, for plaintiff-intervenor Schein.

Harvey Greenfield, Irving Malchman, Kaufman, Malchman, Kaufmann & Kirby, New York City, for plaintiff Bryna Stepak.

Barry F. Schwartz, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for plaintiff Danny S. Fruchter.

Jules Brody, Stull, Stull & Brody, New York City, for plaintiff Lawrence Zucker.

Jack L. Block, Sachnoff, Weaver & Rubenstein, Ltd., Chicago, Ill., for plaintiff Martin Woolin.

Guido Saveri, Saveri & Saveri, Jeremiah F. Hallisey, Hallisey & Johnson, P.C., San Francisco, Cal., for plaintiff The Doctors Company.

Michael B. Hyman, Much, Shelist, Freed, Denenberg Ament & Eiger, P.C., Chicago, Ill., for plaintiff Ruth C. Sigmund, Trustee of Arthur W. Sigmund Residuary Trust and the Arthur W. Sigmund Marital Trust.

Albert R. Malanca, Donald S. Cohen, Kenneth G. Kieffer, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Tacoma, Wash., lead counsel for Washington Public Utilities Group and certain individual defendants.

Edwin J. Wheeler, Wheeler & Huss, Tacoma, Wash., for Town of Steilacoom, Wash.

James P. McNally, Ione, Wash., for Pend Oreille.

Richard A. Nelle, Blaine, Wash., for City of Blaine, Wash.

Jacob L. Smith, Smith & Rosellini, Lynden, Wash., for City of Sumas, Wash.

Julian C. Dewell, Anderson Hunter, Everett, Wash., for Orcas Power & Light Co.

David F. Jurca, Linda Cochran, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash., lead counsel for Columbia defendants and certain individual defendants.

R.L. Marceau, Marceau, Karnopp, Peterson, Noteboom & Hubel, Bend, Or., for Central Electric Cooperative, Inc.

Dennis K. Bromley, Robert Gordon, Pauline O. Fox, Pillsbury, Madison & Sutro, San Francisco, Cal., lead counsel for the Snohomish Group.

Robert D. Stewart, David J. Lenci, Culp, Guterson & Grader, Seattle, Wash., lead counsel for the Washington Public Power Supply System.

Daniel R. Murdock, James L. Stengel, Donovan, Leisure, Newton & Irvine, New York City, for the Washington Public Power Supply System.

Ralph K. Nickerson, Goldendale, Wash., for Public Utilities District # 1 of Klickitat County, Wash.

Rockne Gill, J. Laurence Cable, Bernard Ryan, Schwabe, Williamson & Wyatt, Portland, Or., Larry S. Gangnes, John Tomlinson, Paul Swanson, Lane, Powell, Spears & Lubersky, Seattle, Wash., lead counsel for the Oregon Public Entities and certain individual defendants.

R. Erick Johnson, P. Daniel Lindahl, Ronald E. Bailey, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for City of McMinnville, Or., City of Drain, Or., and Alan H. Jones.

Peter R. Mersereau, Rankin, VavRosky, Doherty, MacColl & Mersereau, Portland, Or., for City of Springfield, Or., City of Milton-Freewater, Or., Steve Loveland and J.R. Criswell.

Dwight A. Halstead, Prosser, Wash., for Benton Rural Electric Assn.

Everett B. Clary, Gwen Whitson, O'Molveny & Myers, Los Angeles, Cal., lead counsel for certain Washington Public Power Supply System Director defendants.

G. Edward Fitzgerald, Gibson, Dunn & Crutcher, Los Angeles, Cal., Michelle Coyle, Gibson, Dunn & Crutcher, Seattle, Wash., for certain Participants' Committee member defendants.

John D. Lowery, Thomas Burt, Thomas Hamerlinck, and David Brenner, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., lead counsel for the Small Utilities Group.

Herbert Gelman, Gelman, Courture & Pate, Tacoma, Wash., for Alder Mutual Light Co.

Malcolm S. Harris, Jack Orr, Michael Charneski, Harris, Orr & Wakayama, Seattle, Wash., co-lead counsel for Member Non-Participants and counsel for Public Utility District No. 1 of Ferry County, Wash., et al.

Camden M. Hall, Stellman Keehnel, Foster, Pepper & Shefelman, Seattle, Wash., co-lead counsel for Member Non-Participants and counsel for City of Seattle, Wash.

David B. Hatton, Civ. Div., U.S. Dept. of Justice, Portland, Or., J. Christopher Kohn, Director, Commercial Litigation Branch, U.S. Dept. of Justice, Washington, D.C., lead counsel for United States of America-Bonneville Power Adm.

Steven J. Palmer, Leavy, Schultz & Sweeney, Pasco, Wash., for Franklin County PUD No. 1.

Bennet A. McConaughy, Foster, Pepper & Shefelman, Seattle, Wash., for City of Richland.

David A. Bennett, David Robbins, Bennett & Bigelow, Seattle, Wash., lead counsel for Law Firm defendants.

Irwin J. Sugarman, Robert Abrahams, Schulte, Roth & Zabel, New York City, Chris Robert Youtz, Sirianni & Youtz, Seattle, Wash., for Houghton, Cluck, Coughlin & Riley.

Otto G. Klein, Peter Danelo, Heller, Ehrman, White & McAuliffe, Seattle, Wash., lead counsel for Engineer defendants United Engineers & Constructors, Inc., Ebasco Services Incorporated, R.W. Beck and Associates.

Ralph G. Wellington, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., John F. Kruger, Karr Tuttle Campbell, Seattle, Wash., for United Engineers & Contractors, Inc.

Peter J. Nickles, Covington & Burling, Washington, D.C., for Ebasco Services Inc.

Roy J. Moceri, Steve Todd, Reed, McClure, Moceri, Thonn & Moriarty, Seattle, Wash., for R.W. Beck & Associates.

James J. Hagan, Simpson Thacher & Bartlett, New York City, lead counsel for Blyth Eastman Paine Webber Inc.

Jerry B. Edmonds, Margaret A. Sundberg, Williams, Kastner & Gibbs, Seattle, Wash., Thomas Chandler, Dan Cavett,

Chandler, Tullar, Udall & Redhair, Tucson, Ariz., for Blyth Eastman Paine Webber Inc.

Herbert M. Wachtell, Peter C. Hein, Wachtell, Lipton, Rosen & Katz, New York City, lead counsel for Underwriter defendants Merrill Lynch Pierce Fenner & Smith, Inc., Salomon Brothers, Inc., Smith Barney Harris Upham & Co., Inc. and Prudential–Bache Securities, Inc.

Philip C. Potter, Jr., Davis Polk & Wardwell, New York City, for Smith Barney Harris Upham & Co., Inc.

Leonard Joseph, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Prudential–Bache Securities, Inc.

Richard A. Cirillo, Rogers & Wells, New York City, for Merrill Lynch.

Ronald E. McKinstry, Bogle & Gates, Seattle, Wash., Seattle Counsel for Underwriter defendants.

P.B. Konrad Knake, White & Case, New York City (counsel for Moody's Investors Service, Inc.), William M. Dallas, Jr., Sullivan & Cromwell, New York City (counsel for Standard & Poor's Corp.), co-lead counsel for Rating Agency defendants.

WILLIAM D. BROWNING, Chief Judge.

## I. INTRODUCTION

In a detailed and painstaking manner, this Court applied a "blended lodestar" analysis to 24 law firms' fee petitions. The Court carefully examined each of the attorney's billing records and made adjustments in both the reasonable hours expended and the reasonable rate in order to calculate the lodestar. The Fee Order, in a few instances, applied a multiplier to an individual attorney's lodestar.

The petitioners have moved for reconsideration of the Court's November 16, 1990 Fee Order. They raise several issues in their moving papers. For the following reasons, the motion will be denied.

## II. DISCUSSION

### A. Percentage–Based Fees vs. Lodestar Analysis

■ The acceptability of percentage-based fees finds its roots in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), where the United States Supreme Court in *dicta*, suggested its appropriateness. It is clear that the Ninth Circuit recognizes the applicability of both percentage-based fee awards and lodestar calculations in common fund cases. Three recent cases illustrate the point: *State of Fla. v. Dunne*, 915 F.2d 542 (9th Cir.1990); *Six Mex. Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989).[1]

Clearly under *Graulty*, *Dunne*, and *Six Mex. Workers*, this Court had a choice when it addressed the fee award in this

---

1. In *Graulty*, the court observed that in common fund cases either a lodestar analysis or percentage-based analysis "may, depending upon the circumstances, have its place in determining what would be reasonable compensation for creating a common fund." *Graulty*, 886 F.2d at 272. In *Graulty*, the court rejected a lodestar approach because, under the circumstances of the case, "it would be impractical, if not impossible, for the district court to determine the number of hours expended." *Id.*

 Importantly, the *Graulty* court noted "with approval" that one court established a "bench mark" of 25%. *Id.* "That percentage," noted the court, "could be adjusted upward or downward to account for any unusual circumstances involved in the case." *Id.* How any adjustment is calculated must be clearly set forth by the district court. *Id.*

 In *Dunne,* the Ninth Circuit again found either method acceptable. The *Dunne* court af-

firmed the district court's use of a lodestar approach and emphasized the applicability of *either* method:

> Despite the recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases, however, we require only that fee awards in common fund cases be reasonable under the circumstances.

*Dunne*, 915 F.2d at 545 (citation omitted).

 Finally, in *Six Mex. Workers*, the court approved a 25% percentage-based award, noting the *Graulty* 25 percent "benchmark" was satisfied. The *Six Mex. Workers* court warned, however, that:

> [t]he benchmark percentage should be adjusted, *or replaced by a lodestar calculation,* when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors. *Six Mex. Workers*, 904 F.2d at 1311 (emphasis added).

case. It could have applied a percentage-based analysis with a 25% "benchmark" or used a lodestar analysis. Adjustments to that benchmark would be made if the recovery were too large or too small or in response to any other relevant circumstances.

The Court, however, is not required to apply a percentage-based analysis. The Court is only required to ensure that the fee award be reasonable. *See Dunne.*

Upon reconsideration, the Court finds that it was correct in not applying a percentage-based analysis. Here, under *Six Mex. Workers,* the Court finds that the *Graulty* 25% benchmark would be too large given the size of the case and the amount of the fund. This point is highlighted by the disparity between the desired percentage and the lodestar result. The latter, after all, is presumptively reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clear Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) ("Delaware Valley I").

The benchmark, in the Court's opinion, is an attempt to quickly approximate what a detailed lodestar analysis would yield. Here, the benchmark patently fails to realize that goal and will not be employed. Accordingly, within its sound discretion, the Court will not retreat from its lodestar analysis. The "benchmark" of 25% sug-

gested in *Graulty,* supra, is arbitrary and artificial. Petitioners opt for a percentage fee of approximately 13.6%, yet another subjective, arbitrary guidepost. Hence reference to benchmarks of 25% or 2 to 4 as multiplier factors provide little guidance. They are so facile as to invite use but they shunt the question of reasonableness to the side.

### B. *Fee Enhancements*

#### 1. The law

Courts treat statutory fee cases differently than common fund cases. Clearly, a thread running between the two types is, as this Court noted, that the fee award must be reasonable.

In the context of multipliers, the conceptual difference between statutory fee cases and common fund cases leads courts to release themselves from the strictures set forth in statutory fee cases. The issue is explained fully in *Skeleton v. General Motors Corp.,* 860 F.2d 250 (7th Cir.1988).[2]

The Ninth Circuit has recognized the differences between the two types of cases, but not in the context of multipliers. *See, e.g., Graulty,* 886 F.2d at 271; *In re Nu Corp. Energy, Inc.,* 764 F.2d 655 (9th Cir. 1985). The Ninth Circuit, however, certainly appears predisposed to accept the princi-

---

**2.** The *Skeleton* court explained the differences between statutory or "fee-shifting" statutes and common fund or "fee-sharing" statutes. When addressing the former, the plaintiff looks to the defendants for recovery and, in the latter, fees are awarded out of a fund they created "[s]imilar to the way a plaintiff's attorney may be compensated by a contingent fee...." *Skeleton,* 860 F.2d at 252. Additionally, in fee-shifting cases, Congress has provided the shift as incentive and defendants who violated the plaintiff's rights are required to compensate plaintiff for the costs of enforcing those rights. *Skeleton,* 860 F.2d at 253. Conversely, in fee-sharing cases, the *attorney* seeks compensation from the fund. *Id.*

How does this affect multipliers? The *Skeleton* court explained:

Panels of this court—as well as commentators and other courts—have expressed concern that awarding risk multipliers to prevailing plaintiffs in statutory fee cases may inequitably burden the defendants. For example, risk multipliers tend to penalize the de-

fendants with the strongest defenses. The stronger the defense, the higher the risk involved in bringing the suit and the greater the multiplier. Thus, defendants with better cases pay higher plaintiff's attorney's fees.... This consideration does not apply in a common fund case.

Further, assessing risk multipliers against losing defendants in effect requires these defendants to "subsidize" plaintiffs' lawyers for their unsuccessful lawsuits against other defendants. In statutory fee cases, this is 'manifestly inconsistent with Congress' intent to award attorney's fees to prevailing parties.' ... In a common fund case, however, this result cannot directly occur because the specific amount of the fee is charged against the plaintiffs, not the defendant.

*Skeleton,* 860 F.2d at 254 (citation omitted). Based on the above, the *Skeleton* court reasoned that a district court had much more latitude in determining whether to use a multiplier to compensate attorneys for its risk of nonpayment. *Id.*

ples set forth in *Skeleton* if called upon to address multipliers.[3]

In sum, whether the Court may use multipliers when applying a lodestar in a common fund case has not been directly addressed by this Circuit. Nevertheless, other circuits have provided sound authority for distinguishing common fund cases from the United States Supreme Court's restriction of their use in statutory fee cases. *See Skeleton.* This Circuit has cited one such case with approval. *See Graulty.*

### 2. Discussion

■ This Court's language finding that it was "restricted" by statutory case authority is hereby disapproved. Case law supports the petitioners' argument that the Court had at its disposal the necessary discretion to apply multipliers. Petitioners argue that this Court's self-imposed restriction has caused it to neglect two *Kerr* factors. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir.1975).[4] The Court, nevertheless, declines to alter the exercise of discretion even after re-examining these "missing" *Kerr* factors, risk and results obtained.[5]

Although the risk was high, it was not so high that firms were reluctant to take the case. Indeed, the opposite is true. The Court is not persuaded that a multiplier expectancy acted as a great incentive. That claim rings hollow in light of the high hourly fees customarily charged in these cases.[6] Surely, risk is reflected, at least in part, by the hourly fees charged.

The second "missing" *Kerr* factor is results obtained. It should be noted that any enhancement to the fees is applied to a base fee considered "presumptively reasonable." *See Delaware Valley I*, 478 U.S. at 565, 106 S.Ct. at 3098. That base fee incorporates an hourly lodestar rate reflecting the quality of counsel and representation. Importantly, the quality of counsel involved here creates an expectancy of excellent results and the fees reflect that expectancy.

Thus, it is not lost on the Court that Counsel in this case represent the highest echelon in the securities' litigation bar. Alexander, *Do the Merits Matter? A Study of Settlements in Securities Class Actions*, 43 Stan.L.Rev. 497, 521–22 (1991).

---

3. In *Graulty*, the court, citing *Skeleton*, observed:

> This method [percentage-based] stands in contrast to other courts who apply the "lodestar method," which calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate *and then enhancing the figure, if necessary, to account for the risks associated with the representation....*
> We believe that either method may, depending on the circumstances, have its place in determining what would be reasonable compensation for creating a common fund.

*Graulty*, 886 F.2d at 272 (emphasis added).

4. The Court expressly rejects the proposition that it did not consider those factors when determining the lodestar. Indeed, the Court considered all *Kerr* factors. Nevertheless, the parties suggest that the Court should have considered these factors again, above and beyond its original lodestar calculation.

The *Kerr* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limita-

tions imposed by the client or the circumstances; (8) the experience, reputation, and ability of the attorneys; (9) the "undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases.

5. This Court's language, addressing these same factors in the Settlement Order and praising counsel, is not conclusive in this proceeding. The Settlement Order must be read in light of the standard of review it employed to approve the settlements. There, the Court's goal was to determine whether 'the settlement, taken as a whole, [was] fundamentally fair, adequate and reasonable to all concerned.' *Settlement Order*, at 11 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir.1982)).

The Court's language addressing the excellent results obtained was aimed, therefore, at determining the adequacy of the settlement with regard to the complex issues. Now, the Court, while still adhering to the view that the results were excellent, must examine those results to determine whether an enhancement to the fees is appropriate.

6. Even if it were true, the parties were on sufficient notice that the use of such multipliers was within the sound discretion of the Court.

Their stature is linked to past successes reflecting commendable results. Their performance here conformed to the Court's high expectations. Their hourly rates necessarily reflect that same component. Commensurate with their skill and reputation comes an expectancy of results that exceed average levels. Counsel demand and receive the highest fees *because* they obtain extraordinary results. Those very fees formed the basis of this Court's lodestar calculation; the Court, therefore, will award an enhancement only when the results exceed the extraordinary.

Finally, the Court doubts that this decision will establish precedent discouraging competent counsel from taking cases such as these. It is disingenuous to argue that counsel will not take cases where they are paid at top market rates[7] reflecting their specialized skills, and where the rates inherently reflect the risks incurred.

### C. Haberman Counsel

The Court has reviewed the matter again and finds that counsel has presented no new facts or legal authority to cause the Court to reverse itself.

### D. Berger & Montague

The Court should not be blamed for this firm's failure to protect its own interests and provide more detailed records. Berger & Montague could have presented all its records to the Court. Only it knew the status of its petition and records. This Court made it clear from the outset that supportable and detailed time records would be required.

Clearly, other counsel had the good sense to provide the Court with their detailed time sheets and this firm could have checked with other firms' procedures. Here, counsel simply failed to carry the burden of showing that the requested fees were reasonable.

The Court spent the better part of two years reviewing the fee petitions in this case. The records originally received were computer print outs of *daily* time records. The newly presented records are the handwritten reports from which those computer records were made. Thus, there is little room for variance. The Court doubts that the new records could be helpful.

### E. Hallisey & Johnson

Hallisey & Johnson essentially argue that the Court's cuts were arbitrary. It complains that it cannot confirm the cuts given the broad strokes employed by the Court.

The Court meticulously analyzed every fee petition. Absent extraordinary evidence that the Court made serious errors, the Court remains confident that its cuts were consistently fair and nonarbitrary.

## III. CONCLUSION

The Fee Order observed that the Court's position regarding the fee petition was fiduciary in character. *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.1975). It is unfortunate that the Court is placed in somewhat of an adversarial posture, vis-a-vis class counsel, at this stage of the proceedings. The Court, however, believes that it has balanced the interests of all parties concerned.

Petitioners argue that they fill a void, on behalf of security holders, which regulatory agencies are unwilling and unable to. For this they seek "reward" to be reflected in the fee. If their success here is a deterrent to future transgressors in the securities field then the bondholders here are paying for a benefit conferred upon others. That is not the purpose of fees in litigation of this kind. Reward for effort and result should be forthcoming, but not for amelioration of future wrongs.

Addressing both the result obtained and the alleged chilling effect of this fee award,

---

7. The Court rejects the Gold firm's argument that the fees did not reflect the current value. The Court, attempting to compensate for delay incurred, awarded fees at a contemporary rate. While it is true that other methods, such as the one suggested by the Gold firm, might have yielded higher awards for the firms, the Court's method has been approved by other courts and was a fair and reasonable attempt at delay compensation.

the Court notes that there were multiple defendants here. Most were insured for substantial sums. Many were able to personally respond in damages. The effect of an adverse judgment on many, if not all, defendants would be disastrous. Bondholder plaintiffs had been denied a contractual recovery in a decision which surprised most commentators and which, with other factors, portrayed them as victimized. Furthermore, Chemical Bank provided the war chest for the substantial cash advances (over $50,000,000.00) to finance the litigation.

In the climate created by this backdrop, it was almost inconceivable that a settlement would not be forthcoming. This factor weighs heavily against both the uncertainty of recovery (risk) as well as against the argument that it would be hard to find lawyers willing to take on a case such as this.

The bondholders here are not concerned about future litigants. They are motivated by self interest and a desire to recover as much as possible of their losses. They did not hire class counsel for the benefit of future litigants or to send any message to securities issuers and the like. Nor will they reap any benefit from the justifiably enhanced reputations of class counsel here. Yet it is their money which is called upon to provide those benefits.

The Court, in its fiduciary capacity, cannot in good conscience surcharge these claimants for those benefits nor substitute its sense of social responsibility for that of the class members.

Class counsel who fear an award of fees based on the factors utilized here can and should consider alternative methods of fee computation. See, e.g., *Court Awarded Attorney Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237.

As to the Bondholders, the Court carefully scrutinized the fee petitions and awarded fees for only those endeavors that benefitted the Class. Although the settlement was enormous in most respects, the Court remained keenly aware that the Bondholders' losses were also enormous. To the extent, therefore, that the Bondholders must share the wealth, there was little to go around.

As to Class Counsel, the Court awarded a reasonable fee. Those hourly rates, calculated into the lodestar, were very high. Indeed, they were calculated at contemporary rates. They reflected the high levels of skill employed, the risks involved, and the fine results obtained. The Court finds that Counsel are sufficiently compensated for a job well done.

The Court recognizes that Class Counsel may appeal this Order. The Court, however, will not permit an appeal to frustrate disbursement of the settlement funds. If an appeal is perfected, the Court directs withholding distribution of only the disputed funds and in the amount necessary to satisfy class counsel's total claim, including interest, on fees claimed on appeal.

IT IS THEREFORE ORDERED that Plaintiffs' motions for reconsideration are DENIED.