**In re CYLINK SECURITIES LITIGATION.**

**No. C 98–4294 VRW.**

United States District Court, N.D. California.

July 23, 2003.

Jules Brody, Stull, Stull & Brody, New York City, Robert C. Schubert, Schubert & Reed, LLP, San Francisco, CA, Sherrie R. Savett, Berger & Montague, PC, Philadelphia, PA, Kevin J. Yourman, James E. Tullman, Elizabeth P. Lin, Weiss & Yourman, Los Angeles, CA, Michael D. Braun, Stull, Stull & Brody, Los Angeles, CA, Allyn Z. Lite, Golstein, Till & Lite, Newark, NJ, Paul O. Paradis, Wolf Popper, LLP, New York City, Thomas G. Shapiro, Shapiro, Haber & Urmy, LLP, Boston, MA, Joseph H. Weiss, Weiss & Yourman, New York City, Stephen J. Fearon, Jr., Abbey, Gardy & Squitieri, New York City, James J. Seirmarco, Abbey, Gardy & Squitieli, LLP, San Francisco, CA, Peter H. Rachman, Barbara J. Hart, Goodkind, Labaton, Rudoff & Sucharow, LLP, Ft. Lauderdale, FL, Jeffrey S. Abraham, Jeffrey S. Abraham Law Offices, New York City, John F. Innelli, Michael Molder, Innelli & Molder, Philadelphia, PA, Brian P. Murray, Rabin & Peckel, New York City, William S. Lerach, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, San Diego, CA, for Nancy Wenderhold and Jonny Alpern.

Boris Feldman, Maura L. Rees, Leo P. Cunningham, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for Cylink Corp. and Fernand Sarrat.

Boris Feldman, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, Robert L. Maines, Janet C. Medlin, Bryant, Clohan, Ott, Maines & Baruh, Palo Alto, CA, for John H. Daws.

Boris Feldman, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for Howard Morgan.

Daniel J. Bergeson, Donald P. Gagliardi, Benjamin J. Holl, Bergeson & Eliopoulos, LLP, San Jose, CA, for Thomas L. Butler.

## ORDER

WALKER, District Judge.

The amended consolidated complaint in this class action securities litigation alleges that defendants violated § 10(b) of the Securities and Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78j(b), Rule 10b–5 promulgated under that provision and § 20(a) of the Exchange Act, 15 U.S.C. § 78t. Doc. # 81. On September 10, 2002, with the assistance of former Magistrate Judge Infante, the parties reached a settlement agreement that they subsequently presented to the court for preliminary approval. Doc. # 137. On November 15, 2002, the court preliminarily approved the settlement, certified the class and approved the form of notice to be used to notify class members of the settlement agreement. Doc. # 140. Plaintiffs now move without opposition for final approval of the settlement and an award of attorney fees and costs. Doc. # 144. For the reasons detailed below, plaintiffs' motion for final approval of settlement and an award of attorney fees and costs (Doc. # 144) is GRANTED. Plaintiffs' motion for an order authorizing distribution of the net settlement fund to

class members (Doc. # 149) is also GRANTED. Because the court finds these matters suitable for determination without additional oral argument, the hearing scheduled for July 31, 2003, is VACATED. See Civ. LR 7–1(b).

I

The factual allegations of the amended complaint are recited in the court's August 29, 2001, order on defendants' several motions to dismiss. See 08/29/01 Order (Doc. # 102) at 2–3. Briefly, the amended complaint alleges that senior officers of defendant Cylink Corporation (Cylink) made material misrepresentations to the market in which Cylink shares were traded in violation of the provisions of the Exchange Act and rules promulgated thereunder identified above, thereby artificially inflating the value at which the stock traded above the value at which the stock would have traded had full and accurate information been available to the market during a roughly seven month period in 1998.

In its November 15, 2002, order, the court preliminarily approved the following class:

> All persons who purchased the common stock of Cylink Corporation during the period from April 23, 1998 through November 5, 1998, inclusive. Excluded from the Class are the Defendants, members of the immediate family (parents, spouses, siblings, and children) of each of the Individual Defendants, any subsidiary of Cylink, the directors and officers of Cylink or any subsidiary of Cylink, any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors, and assigns of the excluded person.

11/15/02 Order (Doc. # 140), at 1, ¶ 4. Since notice was mailed to the ascertainable class members and published as provided by the court's preliminary approval order, class counsel report that no class member has lodged an objection to the settlement agreement, although one potential class member has expressed his desire to opt out of the settlement. See Pl. Final App. Mot. (Doc. # 144) at 5.

In the settlement agreement, defendants agreed to pay into an interest-bearing escrow account a sum of $6.2 million within 30 days of filing of the stipulation of settlement with the court. The monies paid into this fund come exclusively from Cylink's directors and officers liability insurance policies. See Pl Final App Mot (Doc # 144) at 17. Class counsel reports that Cylink carries three such policies, one primary and two excess policies, each providing up to $5 million in coverage for claims and claim-related expenses. See id. At oral argument, class counsel stressed the difficulties that layered coverage of this kind poses in negotiating a settlement. The policies are so-called "wasting policies," i.e., defense costs are deducted from coverage. As a result, the more protracted and expensive the litigation, the less coverage is available. Defense costs at the time of settlement stood at $1.8 million, meaning that total available coverage is $13.2 million. More significantly, the layered feature of coverage means that the first excess carrier has no incentive to contribute to the settlement fund except to the extent that liability (and defense) costs will break through the first layer and the second excess carrier only to the extent there is a threat that liability (and defense) costs will break through the second layer. Plainly, this feature complicates any negotiated resolution as it requires the negotiator (and the three carriers involved) to play off against one another to achieve a mutually beneficial allocation. The settlement at bar needs to be viewed in that light.

Upon final approval of the settlement, notice and administration costs, attorney

fees and expenses as provided for by the court's February 4, 2000, order (Doc # 60) must be paid, with the remainder to be distributed among the members of the class. See Settlement (Doc. # 137, Exh. A), at 7–8, ¶¶ 4–5, 9–10, ¶ 8, 10, ¶ 9, 11, ¶¶ 10–12. In exchange for these payments to the class and class counsel, the settlement provides for dismissal with prejudice of all remaining claims in the amended complaint against defendants. See id. at 14, ¶ 21.

## II

### A

Federal Rule of Civil Procedure 23(e) requires a court to review a class action settlement agreement to determine whether it is "fundamentally fair, adequate and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.1992)). To that end, the court must, after preliminarily approving the settlement and form of notice to the class, conduct a final fairness hearing to determine whether the settlement should be approved. At a fairness hearing for final approval of a class action settlement, the proponents of settlement must satisfy the court that:

(1) the settlement is not collusive,

(2) sufficient discovery has been conducted by lawyers for the class to evaluate claims and defenses,

(3) the lawyer recommending settlement is competent, experienced and not subject to the opposing party's influence, and

(4) only a small fraction of class members, if any, have objected.

See *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig. (In re GMC Pick–Up)*, 55 F.3d 768, 785 (3rd Cir.1995).

With respect to these factors, the court is satisfied that class counsel have met their burden. This litigation has been vigorously contested. Defendants separately filed several motions to dismiss on which the court has ruled. Following those rulings, the parties engaged in settlement talks with the assistance of Judge Infante. His oversight of the settlement negotiations provides every indication that those discussions were conducted at arms length. There is no hint of collusion between class and defense counsel in reaching this proposed disposition. The parties have also demonstrated that they have engaged in extensive discovery, providing both sides adequate opportunity to assess the pros and cons of settlement and further litigation. All counsel in this action have conducted themselves ably and professionally and well represented their clients.

Once the court has satisfied itself with respect to the factors just discussed, the court must then compare the terms of the compromise with the likely rewards of litigation to determine whether the settlement is fair and reasonable. See *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2nd Cir.1995). The factors relevant to this inquiry are generally:

(1) the strength of the case,

(2) the size of the claims,

(3) the risk, expense, complexity and likely duration of further litigation,

(4) the stage of the proceedings,

(5) whether the class has been fairly and adequately represented, and

(6) the reaction of the class to the proposed settlement.

*Officers for Justice v. Civil Service Cmm'n,* 688 F.2d 615, 625 (9th Cir.1982).

The court may consider additional factors dictated by the specific context of the litigation. In addition, the court must also conduct an independent inquiry into any provisions of a settlement for the payment of attorney fees and costs. See *Staton v.*

*Boeing,* 313 F.3d 447, 472–75 (9th Cir. 2002) ("Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is fundamentally fair, adequate and reasonable." (citing FRCP 23(e); internal quotation marks omitted)).

At this stage of proceedings originally commenced in 1998, the parties are in a position to know the comparative strengths and weaknesses of their respective cases. Class counsel have demonstrated that they would face significant obstacles in establishing liability and damages. Plaintiffs must establish materiality together with actual knowledge of falsity or reckless disregard for the truth and hence defendants' actual intent to deceive or reckless disregard of the truth. Such proof is, of course, difficult. Moreover, class counsel have demonstrated that even were they to prevail at trial on behalf of the class, the available source of recovery might well disappear. The source of the settlement fund is Cylink's directors and officers liability policies. The amount recoverable from those policies is, at most, $13.2 million, and, as a practical matter, significantly less than that. But if plaintiffs establish the insured's fraudulent conduct, all such coverage might well disappear. See Pl. Final App. Mot. (Doc. # 144) at 17. Given the precarious state of Cylink's finances, there is considerable uncertainty whether Cylink could pay any significant amount in satisfaction of the judgment.

Obtaining court approval of a settlement puts class counsel in an awkward posture: they must show the weaknesses of their case, its improbability of success and the barriers to their clients' recovery in order to make the negotiated settlement appear attractive. Throwing one's case into question before the judge and opposing counsel without undermining it is, to say the least, a delicate exercise.

## B

■ To measure the fairness, adequacy and reasonableness of the settlement agreement with respect to the anticipated recovery to the class, it is useful to examine the relationship between the proposed settlement recovery and the recoveries obtained in other class action suits in comparable securities litigation. The most comprehensive empirical study providing such comparison drawn to the court's attention is a report prepared by Mukesh Bajaj, Sumon Mazumdar and Atulya Sarin. See Bajaj, et al., "Securities Class Action Settlements": *an Empirical Analysis* (Nov. 16, 2000) (Bajaj), available at http://securities.stanford.edu/research/studies/20001116_SSRN_Bajaj.html. Beginning with a data set of 2,167 federal case filings and 579 state case filings, the Bajaj Report develops a standard by which to compare class action settlements. Bajaj calculates two measures of potential damages in each case: (1) using a proportional decay model to quantify the number of "damaged shares," Bajaj estimates a "true value" of the security at issue using event study or regression analysis to calculate the difference between the stock price and an industry index; Bajaj refers to this as the "industry-specific index" measure of potential damages; and (2) the difference between the highest value of the issuer's market capitalization and the market capitalization one day after the end of the class period; Bajaj refers to this as the "market drop" measure of potential damages.

In the motion for preliminary approval of settlement, class counsel provided the court with the declaration of Paul Mulholland, a certified valuation analyst and certified public accountant, who prepared a report analyzing the settlement agreement

in this action. See Mulholland Report (Doc. # 137, Exh. G). Using the Bajaj Report's industry specific index approach, Mulholland calculated the potential damages in this case at $30,591,221. See id. at 5, ¶ 6. Dividing this sum into the proposed settlement amount implies that settlement amount to potential losses is 20.27%. Mulholland compares this percentage recovery to recoveries in cases Bajaj analyzes that involved revenue recognition allegations, the category into which this case falls. That comparison implies a recovery significantly above the mean and median observed by Bajaj for such cases. See id. Employing the industry-specific index, Bajaj calculates the mean settlement amount relative to potential investment loss at 12.26% for revenue recognition cases; the median settlement amount relative to potential investment loss is 5.34%. See Bajaj Report at 30, tbl. 13. Under the market drop analysis, the mean figure is 2.95% and the median figure is 2.02%. See id.

Defendants submitted the declaration of an economic expert comparing this settlement to others of its kind. Doc. # 146. In this declaration, David J. Ross, an economist and senior vice president of Lexecon, Inc., includes an analysis of the settlement also using the industry index measure developed by Bajaj. Ross' declaration also makes reference to a monograph comparing securities class action settlements prior to the passage of the 1995 amendments to the '33 and '34 securities acts and settlements after those amendments. See Simmons, "Post–Reform Act Securities Lawsuits: Settlements Reported through December 2001," (Cornerstone study)-(Cornerstone Research: 2002) available at http://www.cornerstone.com/fram_res.html. The Cornerstone study develops information similar to that produced in the Bajaj Report based on a sample of 303 securities class action suits filed after December 22, 1995, the date of passage of the amendments and compares this information with that produced from a sample of 125 Rule 10b–5 cases filed during 1991 to 1994. Because this is a post-amendment case, only the former sample is of interest here.

Applying the Bajaj specific-index measure, potential investor losses in this case are $44.8 million. Ross Decl. (Doc. # 146) at 9. The $6.2 million settlement constitutes 13.8 percent of potential losses. Of the securities class action settlements in the Ninth Circuit in the Bajaj sample, mean and median settlements were 15.16 and 5.92 percent, respectively. Bajaj, at 32, tbl. 5. Because a relatively few large settlements will skew the mean, the median probably better serves as a point of comparison. Settlements by issuers in Cylink's SIC code in the Bajaj sample averaged 15.4 percent with a median 6.8 percent. Bajaj at 31, tbl. 14.

According to Ross, the Cornerstone study estimates aggregate damages using the same proportional decay model employed by Bajaj, but adjusts the "true value" of the security at the end of the class period for movements in the S & P 500 index rather than an industry specific index. Applying the Cornerstone study's specific-index measure, potential investor losses are $45.7 million. Ross Decl. (Doc. # 146) at 9, ¶ 17. The proposed settlement of $6.2 million constitutes 13.6% of potential losses. The median percentage of potential losses recovered in settlements by issuers in class actions involving restatement allegations after the enactment of the 1995 amendments to the Exchange Act in cases analyzed in the Cornerstone study is 7.0%. See Cornerstone study at 6.

Neither Mulholland nor Ross made any reference in the declarations filed with the court to Bajaj's market drop measure of potential damages. Accordingly, the court directed the parties to submit this information. 03/12/03 Order (Doc. # 147). Specif-

ically, the court directed the parties to submit a supplemental declaration by Ross in which he (1) calculated the market drop measure for Cylink stock consistent with the Bajaj approach; (2) set forth the formulae by which he has calculated the market drop measure and those he previously used to calculate the industry specific index measure; and (3) furnished the data from which all of these values are derived. 03/12/03 Order (Doc. # 147) at 3. Ross submitted this supplemental declaration on March 20, 2003, which the court has reviewed. Doc # 148.

To calculate the market drop measure of potential damages, Ross measured the difference between the highest value of Cylink's market capitalization during the class period and value of Cylink's market capitalization one day after the end of the class period. Ross Supp. Decl. (Doc. # 148) at 2, ¶ 2. By that measure, the "market drop" of Cylink stock as measured by Ross is $295.4 million. Id. The proposed settlement of $6.2 million is 2.1% of that figure. That percentage is somewhat below the median market drop figure observed by Bajaj, 2.95% and slightly above the mean, 2.02%.

The value of the measures of damages provided in the Bajaj and Cornerstone studies is not that they provide an accurate measure of actual damages; these plainly vary from case to case. Rather, the value of these studies lies in the standard they afford by which to make comparisons of settlements across cases. By either measure employed in the Bajaj or Cornerstone studies, the settlement in this action compares reasonably favorably with post–1995 settlements in comparable cases. These comparisons provide further assurance that the settlement proposed in this action is fair, reasonable and adequate.

## C

■ Of course, the entire sum of $6.2 million will not be distributed among the class. The settlement agreement provides for a payment from the common fund of the costs of administration and notice and attorney fees. As noted above, the court must make a separate inquiry into the adequacy of these provisions of the settlement agreement.

The court extensively addressed the issue of attorney fees in its February 4, 2002, order appointing class counsel. The court solicited bids from law firms interested in representing the class in this litigation and selected class counsel based on the information contained in those bids. The award class counsel seek for reaching this settlement is in line with its successful bid. For a settlement of this magnitude, class counsel's fee agreement provides for class counsel to receive 25% of the first $500,000 of recovery, 17.5% of the next $500,000, 15% of the next $4 million and 10% of the remaining $1.2 million, given the current procedural posture of the litigation. Based on that sliding fee scale, class counsel requests $932,500 in fees, a figure roughly 15% of the gross settlement amount. In addition, class counsel request an award of $56,961 for the costs of administration and notice, a figure slightly under 1% of the gross settlement amount. Deducting these two figures from the amount of the gross settlement, $5,210,539 remain for distribution among the class members. This net sum represents approximately 84% of the gross settlement amount.

Given the nature of this litigation and the size of this settlement amount, the court concludes that these attorney fee and cost figures are fair, adequate and reasonable. On the one hand, the court notes that the 16% award of attorney fees and expenses falls significantly below the Ninth Circuit's 25% benchmark figure for attorney fees in common fund class action

litigation. See *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir.2000) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.1993); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989)). The court also notes that a 16% award of attorney fees and costs is not out of line with attorney fee and costs awards in other cases in which district courts have provided for competitive selection of class counsel. See Hooper & Leary, "Auctioning the Role of Class Counsel in Class Action Cases: a Descriptive Study," (Federal Judicial Center 2001) at 71, tbl. 4 (here reproduced in relevant part as Table 1).

Table 1:

| Case name | Total amount of recovery to class and counsel | Percentage of total recovery going to class | Percentage of total recovery going to class counsel |
|---|---|---|---|
| *In re Oracle* | $25 million | 77.5% ($19,375,000) | 22.5% ($4.8 million in fees + $825,000 in expenses) |
| *In re Wells Fargo* | $13,713,709.54 | 78% ($10,632,035) | 22% ($2,873,150 in fees + $208,605 in expenses) |
| *In re California Micro Devices* | $26 million | 84.3% ($21,590,090.20) | 15.7% ($4,028,345.80 in fees *and* expenses) |
| *In re Amino Acid Lysine* | $49 million | 93% ($45.5 million) | 7% ($3.5 million in fees *only*) |
| *In re Cendant* (non-Prides) | $3,186,500,000 | 91.3% ($2,909,407,337) | 8.7% ($262,468,857 in fees + $14,623,806 in expenses) |
| *In re Cendant* (Prides) | $341,480,861 | 94% ($319,783,905) | 6% ($19,329,463 in fees + $2,367,493 in expenses) |
| *In re Auction Houses* | $512 million | 94.8% ($485.25 million) | 5.2% ($26.75 million in attorney fees *and* expenses) |
| *In re Bank One* | $45 million | 93% ($42 million) | 7% ($2.75 million in fees + $250,000 in expenses) |
| *In re Network Associates* | $30 million | 92% ($27,559,187) | 8% ($2,080,000 in fees + $360,813 in expenses) |

Given the relationship between the requested attorney fee award and the Ninth Circuit benchmark, the court concludes that an award of attorney fees and administrative costs in the amount requested is fair, adequate and reasonable, and so class

counsel's requests for an award in that amount is GRANTED.

## III

As a housekeeping matter, one additional motion remains pending in this action: plaintiffs' motion for expenses and sanctions. Doc. # 134. At oral argument, plaintiffs' counsel requested that, in light of the settlement reached by the parties and herein approved by the court, this motion be withdrawn. Plaintiffs' motion for expenses and sanctions (Doc. # 134) is accordingly TERMINATED.

## IV

In their motion for an order authorizing distribution of net settlement funds to class members, plaintiffs report that the claims process has been completed. Doc. # 149 at 2, ¶ 5. Documented claims with approved losses of $8,292,756.87 for 1,577,-563 damaged shares have been approved to participate in the settlement upon the approval of the court. Id., Exh. A. Given that the claims process has been completed and the court has determined that the settlement warrants approval, plaintiffs' unopposed motion for an order authorizing distribution of settlement funds to approved class members (Doc. # 149) is GRANTED.

## V

For the reasons articulated in the court's November 15, 2002, and those stated above, the court certifies the following class, pursuant to FRCP 23(a) and (b)(3):

All persons who purchased the common stock of Cylink Corporation during the period from April 23, 1998, through November 5, 1998, inclusive. Excluded from the class are defendants, members of the immediate family of the individual defendants (parents, spouses, siblings and children), any subsidiary of Cylink, the directors and officers of Cylink or any subsidiary of Cylink, any entity in which any excluded person has a controlling interest and the legal representatives, heirs, successors and assigns of any excluded person. Also excluded from the class is Michael E Titus, who filed a valid request for exclusion.

See 11/15/02 Order (Doc. # 140); Settlement (Doc. # 137, Exh. A). And the court hereby certifies this action as a class action on behalf of the class identified. The court APPROVES the settlement agreement between the parties and the court ORDERS an award of $932,500 as attorney fees to class counsel. The court further ORDERS a payment of $56,961.07 to the claims administrator for the costs of notifying the class and administering the settlement until February 20, 2003. All remaining funds shall be distributed among the class as provided by the settlement agreement. All remaining claims against defendants are DISMISSED with prejudice as provided by the settlement agreement.

The court retains exclusive jurisdiction over the parties and class members for any additional matters pertaining to this litigation. The parties may, however, agree to reasonable extensions of time to carry out any of the provisions of the stipulation of settlement without court approval.

In sum, plaintiffs' motion for final approval of class settlement (Doc. # 144) is GRANTED. Plaintiffs' motion for expenses and sanctions (Doc. # 134) is TERMINATED. Plaintiffs' motion for an order authorizing distribution of net settlement fund to class members (Doc. # 149) is GRANTED. The clerk is directed to enter final judgment, close the file and terminate all pending motions.

IT IS SO ORDERED.