**Donna VIZCAINO, et al., Plaintiffs,**

v.

**MICROSOFT CORPORATION,**
**et al., Defendants.**

**Rebecca Hughes, et al., Plaintiffs,**

v.

**Microsoft Corporation,**
**et al., Defendants.**

**Nos. C93–178C, C98–1646C.**

United States District Court,
W.D. Washington,
at Seattle.

April 16, 2001.

· David F. Stobaugh, Stephen K. Strong, Brian J. Waid, Stephen K. Festor, Bendich, Stobaugh & Strong, Seattle, WA, for Donna Vizcaino, Jon R Waite, Mark Stout, Geoffrey Culbert, Lesley Stuart, Thomas Morgan, Elizabeth Spokoiny, Larry Spokoiny, plaintiffs.

Fredric C Tausend, Carol S Arnold, Preston Gates & Ellis, Seattle, WA, Theodore O Rogers, Jr, Sullivan & Cromwell, New York City, Richard H Sauer, Sullivan & Cromwell, Washington, DC, James D Oswald, William H. Song, Michael Paul Monaco, Song Oswald & Mondress PLLC, Seattle, WA, for Microsoft Corp, and its health and benefits plans: Health Benefit Plan, Life Insurance Plan, Short-term and Long-term Disability Plans, and Savings (401K) Plan, defendant.

Lawrence W. Schonbrun, Berkeley, CA, Dale Melvin Foreman, Wenatchee, WA, David B. Bukey, Seattle, WA, for Objector Class Members.

ORDER

COUGHENOUR, Chief Judge.

## I. INTRODUCTION

Following notice and hearing in accordance with Fed.R.Civ.P. 23, this class action has been settled for a compromise payment of $96.885 million. Counsel for the plaintiffs and class members have applied for an award of attorneys fees, including reimbursement of litigation expenses, to be paid from the common fund.

As the settlement agreement now stands, Class Counsel has requested a percentage-based fee of $27,127,800 (including, *not* adding—several hundred thousand dollars in expenses), which is 28% out of an approximately $97 million cash Settlement Fund, or less than 20% of the common fund.[1]

## II. STANDARD TO BE APPLIED

■ There is no doubt that Counsel have performed capably. Out of a class of potentially 30,000 members, only one group of a handful of objectors has objected to the fee request. The Court must nevertheless be careful to protect the interests of the settlement fund beneficiaries by ensuring that the fee award is reasonable under the circumstances. As stated in *In re WPPSS Litigation*, 19 F.3d 1291, 1302 (9th Cir.1994):

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs.

■ The Ninth Circuit has held that generally, in determining attorneys fees in a common fund case, the court has discretion to use either the lodestar method or the percentage method. *Id.* District

---

**1.** Class Counsel notes that relief for the class not only included the $96.885 million cash settlement fund, but also the conversion of 3,000 class members into "regular" W–2 status Microsoft employees in fiscal year 1999 alone, which entitles them to participate in Microsoft's employee benefit programs. Assuming the same number of class members would receive these benefits for two years, 1999–2001, the value of these benefits is approximately $33,826 per class member or $101.48 million for 3,000 members of the class. Class Counsel notes that the total common fund in this case is thus $198.365 million ($96.885 million in cash + $101.48 million for the value of benefits). Accordingly, the attorneys fees specified in the Settlement Agreement for class counsel, $27.1278 million, constitute only 14% of the *total* common fund (or 28% of the cash in the Settlement Fund).

Courts often use the lodestar method as a cross-check on the percentage method in order to ensure a fair and reasonable result. *See In re Immunex Securities Litigation,* 864 F.Supp. 142, 144 (W.D.Wa. 1994). However, courts have held that when state substantive law applies, attorneys' fees are to be awarded in accordance with state law. *Johnson v. Incline Village General Improvement Dist.,* 5 F.Supp.2d 1113, 1114 (D.Nev.1998). *Mangold v. California Public Utilities,* 67 F.3d 1470, 1478–9 (9th Cir.1995), held that this principle applies to supplemental state claims as well as to diversity claims. Under Washington law, the percentage method, without a lodestar cross-check, should be used in common fund cases. *Bowles v. Department of Retirement Systems,* 121 Wash.2d 52, 70–74, 847 P.2d 440 (1993).

■ The Ninth Circuit has summarized these approaches, as follows:

> Under the lodestar/multiplier method, the district court first calculates the "lodestar" by multiplying the reasonable hours expended by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986). The court may then enhance the lodestar with a "multiplier," if necessary, to arrive at a reasonable fee. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891 (1984). Under the percentage method, the court simply awards the attorneys a percentage of the fund sufficient to provide plaintiffs' attorneys with a reasonable fee. *Paul, Johnson, Alston, & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir.1989).

*Id.* at 1294, n. 2. The Ninth Circuit has recognized however, that neither method should be applied in a formulaic or mechanical fashion. *Id.*

There is some dispute in this case as to whether state law or federal law applies to the determination of the reasonableness of attorneys fees. However, as discussed below, this Court finds that the requested fees are reasonable under both methodologies. Whether a court applies the lodestar or the percentage method, the main requirement is that fee awards in common fund cases be reasonable under the circumstances. *Florida v. Dunne,* 915 F.2d 542, 545 (9th Cir.1990).

## III. APPLYING STATE LAW— PERCENTAGE METHOD

■ According to Class Counsel, the settlement fund created for the class is derived from their successful claim for employee benefits under Microsoft's Employee Stock Purchase Plan (ESPP). The ESPP claim was based on, and decided under, Washington State contract law. Accordingly, the law of Washington governs the determination of whether class counsel's attorney fee request is reasonable. *See Mangold v. California Utilities,* 67 F.3d 1470, 1478 (9th Cir.1995). The Washington Supreme Court has held that the percentage-of-recovery approach is used in determining attorneys fees in a common fund class action. *Bowles v. Department of Retirement Systems,* 121 Wash.2d 52, 70–74, 847 P.2d 440 (1993) (class action concerning calculation of public employees' retirement benefits). The Washington Supreme Court rejected the lodestar method for determining attorneys fees in a common fund action. The Supreme Court stated that "[i]n common fund cases, the size of the recovery constitutes a suitable measure of the attorneys' performance." *Id.* at 72, 847 P.2d 440. "[U]nder the percentage of recovery approach, the attorneys are to be compensated according to the size of the judgment recovered, not the actual hours expended." 121 *Bowles,* Wash.2d at 75. The Court defined the

"benchmark" percentage of recovery fee as 25% of the recovery obtained, including future benefits, with 20 to 30% as the usual range of common fund fees. *Id.*, at 72–73, 847 P.2d 440.

After a careful review of the record and surrounding circumstances, the Court determines that the undisputed facts in the record show class counsel's percentage of recovery fee request is reasonable. The Court considered several factors in making this determination. First, Class Counsel achieved exceptional results for the class. In a common fund case, "the size of the recovery constitutes a suitable measure of the attorneys' performance." *Bowles,* 121 Wash.2d at 72, 847 P.2d 440. The Settlement Agreement here creates a $96.885 million Settlement Fund to compensate class members for past Employee Stock Purchase Plan (ESPP) gains which they were denied. The common fund constitutes extraordinary relief in this case, because, as Class Counsel note, there were no controlling precedents when Class Counsel agreed to pursue the case, Class Counsel had to overcome the potentially dispositive fact that the class members had signed agreements stating they had no rights to benefits, and Microsoft fought this case vigorously for years.

Second, the Court recognizes that the case was extremely risky for class counsel to pursue because of negative facts, no controlling law and the vigorous defense of the case. Courts have recognized that a high risk factor is one reason for increasing class counsel's attorney fee award above the "benchmark" 25% fee. *In re Pacific Enterprises Securities Litigation,* 47 F.3d 373, 379 (9th Cir.1995) (33% of the common fun as attorneys fees was justified because of the complexity of the issues and the risks); *Williams v. Boeing Co.,* No. C98–761 (W.D.Wash.1999) (28% of the common fund as attorneys fees was rea-

sonable in employment discrimination class action because, among other reasons, of "the risks to the plaintiffs' counsel's firm"). On the other hand, a fee lower than the "benchmark" 25% may be appropriate, if a civil action simply "piggy-backs" on another case.

Here there are multiple reasons why the case was extremely risky for counsel to pursue. For example, there were no controlling precedents concerning their claims, only analogies involving various areas of law. In addition, Class Counsel's risk was even greater, and their work made more difficult, because Microsoft is one of the nation's largest and most formidable companies and it, and several law firms, defended the case vigorously for several years.

Furthermore, Class Counsel had to overcome the significant obstacle presented by the fact that the class members had signed agreements with Microsoft under which they supposedly gave up their right to employee benefits. Many lawyers arguably would not have agreed to represent the plaintiffs because of the agreements they had signed. Indeed, the district court dismissed the plaintiffs' ESPP claim because of this fact. Doc. 223, Order [6/20/94], p. 4 ("the contract between Microsoft and the plaintiffs specifically stated that no benefits were provided by Microsoft"). The dissenting opinions in *Vizcaino I* and *Vizcaino II* were also largely based on this fact. *Vizcaino I,* 97 F.3d at 1201 (Trott, J. dissenting) ("these plaintiffs had express contracts for 'no benefits' "); *Vizcaino II,* 120 F.3d at 1019 (O'Scannlain J., *et al.,* dissenting) ("[m]oreover, the [plaintiffs] each signed contractual documents which expressly states that they would not receive any benefits").

The high risk Class Counsel faced is also shown by the repeated losses the class suffered in the district court which, had

the decisions stood, would have resulted in no or little recovery for the class. Even in 1998, after representing the plaintiffs for nine years and winning twice in the Ninth Circuit, class counsel still faced the prospect of obtaining extremely little relief for the class when the Court redefined the class to only include employees who started to work at Microsoft *after* 1990. This would have potentially reduced the class to only 100–200 members. Class Counsel however successfully petitioned the Ninth Circuit for an extraordinary writ of mandamus that restored the class definition so that workers misclassified as *non*-employees at Microsoft after March, 1990 were again included. *Vizcaino III*, 173 F.3d 713 (9th Cir.1999). Class counsel then successfully responded to Microsoft's petition for rehearing *en banc* and its petition for writ of certiorari in the Supreme Court. 184 F.3d 1070 (9th Cir.1999), *cert. denied*, 528 U.S. 1105, 120 S.Ct. 844, 145 L.Ed.2d 713 (2000).

Third, the Court recognizes that Class Counsel's efforts resulted in significant nationwide public benefit. The case is the subject of articles in the Harvard Law Review, American Journal of Trial Advocacy, Berkeley Technology Law Journal, National Law Journal, The Washington Post, Business Week, New York Times, Wall Street Journal, Los Angeles Times, Lawyers Weekly USA, and the American Bar Association Journal. As a result of this case and the large amount of publicity surrounding it, many employers have been advised to carefully ensure their workers are properly classified so that they will not get into the same trouble as Microsoft. Workers who would have otherwise been mis-classified as contingent workers are being properly classified as employees and receiving the benefits that are inherent in that classification.

Fourth, class counsel argues that the requested fee of approximately 28%, is equal to or lower than the market rate and thus reasonable. Judge Posner of the Seventh Circuit stated that in awarding attorneys fees to class counsel, courts should attempt to replicate the market rate. *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir.1992). ("in awarding fees courts should determine what the lawyer would have received if he were selling his services in the market rather than being paid by court order."). Thus if the market rate is a contingent fee percentage of recovery, "class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome." *Id.* at 572. Class Counsel argue that due to a variety of factors, including the nature of the Defendant, the novel and complex issues presented, the risk and the expense of litigating a class action, no rational private lawyer in the nation would have taken this case for less than one-third of any recovery. The Court agrees. Furthermore, the named plaintiffs in this case agreed to pay class counsel 30% of any recovery in their retainer agreements, which is higher than class counsel's request for attorney fees here. Therefore, the requested fees in this case are at or below the market rate. The Court also recognizes that an award of attorneys fees at the market rate is necessary to provide attorneys the incentive to take employee class actions, and without such an incentive, employees would be faced with substantial difficulties finding counsel willing to undertake meritorious, but high-risk, litigation.

Fifth, the Court notes that Class Counsel represented the plaintiffs for a significantly long time on a contingent fee basis. Class Counsel signed contingent fee retainer agreements here with the named plaintiffs more than 11 years ago. The

retainer agreements provided that the named plaintiffs retained Class Counsel to bring a class action against Microsoft for employee benefits, and in consideration of class counsel undertaking the representation, the named plaintiffs agreed to pay class counsel 30% of any recovery. The representation of a class for more than a decade on a contingent-fee basis is, of course, an extremely long time to represent a client without getting paid and without knowing when, and if you will ever get paid. Class Counsel also incurred hundreds of thousands of dollars in expenses in connection with the *Vizcaino* case, had to forgo significant other work to pursue the case, and the firm's annual income greatly declined as a consequence.

Therefore, based on these 5 factors, the Court finds that the fee request is both reasonable and warranted using a percentage method.

### IV. APPLYING FEDERAL LAW—LODESTAR CROSS–CHECK

Under Ninth Circuit case law, in making the decision of reasonableness of attorneys fees, the court in a common fund case has discretion to use either the lodestar method or the percentage method. *In re*

*WPPSS,* 19 F.3d at 1295–96. District Courts often use the lodestar method as a cross-check on the percentage method in order to ensure a fair and reasonable result. *See In re Immunex Securities Litigation,* 864 F.Supp. 142, 144 (W.D.Wa. 1994). Accordingly, in this case the lodestar method will be used as a cross-check on the percentage method, as often must be done to assure a fair and reasonable result. *See In re WPPSS,* 19 F.3d at 1296–98.

■ Similar to state law, under federal case law, the "benchmark" percentage of recovery fee is 25% of the recovery obtained, including future benefits, with 20 to 30% as the usual range of common fund fees. *Paul Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir.1989) ("fees awards range form 20 percent to 30 percent of the fund created[;] ... the 'bench mark' percentage for the fee award should be 25 percent"); *In re Activision Securities Litigation,* 723 F.Supp. 1373, 1377 (N.D.Ca.1989) ("this court finds that in most recent cases the benchmark is closer to 30%").

■ The lodestar cross-check fee would be as follows:

| Type of Employee | Number of Hours | Hourly Rate | Fees Earned |
|---|---|---|---|
| Partners | 13,417 hrs | $350/hr | $5,031,375 |
| Non–Partners | 4,370 hrs | $250–$300/hr | $1,237.950 |
| Non–Lawyer Staff | 6,104 hrs | $100/hr | $ 610,400 |
| Legislative Advocacy | | | $ 507,151 |
| | | Subtotal | $7,386,876 |

Therefore, the declarations and other materials filed by plaintiff's counsel show that their fees for work done on this case, if charged at current hourly rates, would come to $7,386,876. Nothing in the record suggests that any of the hours claimed

should be disallowed. The lodestar is thus $7,386,876.

As noted above, Class Counsel faced many obstacles and took a major risk in handling this litigation on a contingency

basis. To restrict Class Counsel to the hourly rates they customarily charge for non-contingent work—where payment is assured—would deprive them of any financial incentive to accept contingent-fee cases which may produce nothing. Courts have therefore held that counsel are entitled to a multiplier for risk. *See In re WPPSS,* 19 F.3d at 1301–02.

With a multiplier of four, the fee would be $29,547,504, excluding several hundred thousand dollars in expenses to be added on top. If the multiplier were only three, the fee would be $22,160,628 excluding expenses.

 Class Counsel argues that in light if the extraordinary risk, difficulty, complexity, and exceptional results of the case, a multiplier of at least six and up to twenty or higher would be appropriate. *In re Cendant,* 109 F.Supp.2d 285, 292, 302 (D.N.J.2000) (multiplier of 23 or 32); 1 Conte, *Attorney Fee Awards* § 2.06 (1993), p. 39 (multiplier of 5–10); 3 *Newberg on Class Actions* § 14.03, p. 14–5 and n. 21 (1992) (citing multipliers of five and ten in "large common fund" cases). In determining an appropriate market rate, a district court may make reference to the factors developed by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974) and approved by this Court in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69–70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Those factors include:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.[2]

*Kerr,* 526 F.2d at 70.

Looking at these factors and in light of the complexity of this case, the risks involved and the length of the litigation, a multiplier of at least 3 or 4 is wholly justified. Therefore, the lodestar approach would result in a fee of between $29,547,504 and $22,160,628. Comparing this to the percentage method fee of $27,127,800, the requested attorneys fees appear reasonable in this case.

### V. CONCLUSION

For the reasons stated, it is hereby ORDERED that Class Counsel is awarded $27,127,800 in attorneys fees and costs. The Court finds oral argument and appointment of an expert unnecessary.

**2.** The applicability of the sixth and tenth factors may be in doubt. *See City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). However, the Court here would reach the same result in this case with or without consideration of these two factors.