**Fred STEINER; William Goldstein; Nathan East, dba New East Music; Eugene A. Booker, Jr., all individuals and on behalf of all those similarly situated aka Chuckii Booker dba Allensongs, Plaintiffs–Appellees,**

**Universal Music; Warner Music Group, Inc.; Sony BMG Music Entertainment; Sony/ATV Music Publishing; BMG Music Publishing N.A. and Zomba Enterprises; EMI Music Publishing; EMI Music North America, Intervenors–Appellants,**

**and**

**John Yanni Christopher, dba Yanni Music Publishing; Steven Wethy; Patricia Smith, Intervenors,**

**v.**

**AMERICAN BROADCASTING COMPANY, INC.; American Broadcasting Company, Inc.; Image Edit, Inc.; Spelling Satellite; Video Services, Corporation; Audio Plus Video International, Inc.; Worldvision Enterprises, Inc., Defendants.**

**No. 05–55773.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 2007.

Filed Aug. 29, 2007.

Jefferey L. Graubart, Esq., Pasadena, CA, David Kesselman, Esq., Maxwell M. Blecher, Esq., Blecher & Collins, P.C., Los Angeles, CA, for Plaintiffs–Appellees/Intervenors.

Steven F. Helfand, Esq., John William Davis, Esq., Law Office of John W. Davis, San Francisco, CA, for Intervenors.

Joel McCabe Smith, Leopold Petrich & Smith, PC, Peter I. Ostroff, Esq., James M. Harris, Esq., Rollin A. Ransom, Esq., Sidley Austin, LLP, Brian G. Wolf, Esq., Lavely & Singer, PC, Los Angeles, CA, Scott T. Pratt, Esq., Keesal Young & Logan, Long Beach, CA, Thomas J. Kavaler, Esq., Cahill, Gordon & Reindel, New York, NY, for Intervenors–Appellants.

M. Randall Oppenheimer, Esq., O'Melveny & Myers, LLP, Maxwell M. Blecher, Esq., Blecher & Collins, P.C., Richard B. Kendall, Esq., Irell & Manella, Los Angeles, CA, for Defendants.

Before: KLEINFELD and PAEZ, Circuit Judges, and HART *, District Judge.

## MEMORANDUM **

Class members Universal Music Group and other major affiliated record labels and music publishing companies ("Majors") appeal the district court's order awarding attorneys' fees to class counsel. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

We review a district court's award of attorneys' fees for an abuse of discretion. *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1005 (9th Cir.2002). We review the court's underlying factual findings for clear error and review de novo any legal analysis relevant to the fee award. *Id.* Although 25 percent is the benchmark fee award in common fund cases, the "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Mi-*

---

* The Honorable William Hart, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Cir. R. 36–3.

*crosoft Corp.,* 290 F.3d 1043, 1047–48 (9th Cir.2002).

■ The Majors contend that the district court abused its discretion because it committed a number of legal and factual errors in awarding attorneys' fees to class counsel. The Majors argue that the district court applied incorrect legal standards by finding relevant that class counsel achieved only "excellent results" and only "faced a good deal of risk," whereas the district court in *Vizcaino* found relevant that class counsel achieved "*exceptional* results" and faced "*extreme* [ ] risk." *See id.* (emphases added). This argument is without merit. In *Vizcaino,* we did not set forth narrow legal standards cabined by the particular set of circumstances that the district court had found relevant. Rather, we emphasized that in selecting a reasonable percentage fee award in a common fund case the district court must consider *all* relevant circumstances. Here, the district court considered class counsel's success and risk, and found that they achieved excellent results and faced a good deal of risk. *See Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990) (noting that class counsel "obtained substantial success"); *In re Pac. Enter. Sec. Litig.,* 47 F.3d 373, 379 (9th Cir.1995) (recognizing "the complexity of the issues and the risks"). Under *Vizcaino,* these were highly relevant circumstances, which the district court properly considered.

The Majors also argue that the district court made erroneous factual findings in assessing class counsel's success and risk. First, the Majors contend that class counsel did not achieve excellent results, be-

cause they negotiated a facially inadequate initial settlement of $25.4 million, as demonstrated by the Majors' ability to negotiate a final settlement of $65 million. The district court, however, addressed this contention and made findings to the contrary, which were not clearly erroneous. Specifically, the court found that the Majors were able "to extract a much more attractive settlement" because of the "much greater bargaining power" that they brought to the table, not because the original settlement amount was inadequate. The court also found that the Majors chose to build on the initial settlement agreement negotiated by class counsel, instead of opting out of the class and pursuing independent litigation, because the initial settlement amount "obviously had value to the Majors." [1]

Second, the Majors argue that class counsel did not face significant risk in litigating the case, because they had successfully litigated an earlier case against Defendants involving "identical copyright issues." The prior litigation, however, involved a single plaintiff and, hence, was not subject to the difficulties of certifying a large class and the possibility of the Majors foreclosing any settlement by opting to independently litigate their claims. Also, the record suggests that Defendants did not keep adequate records of the sound recordings they had used, and that other records important to the litigation had been destroyed in a fire. Consequently, the district court did not clearly err in concluding that class counsel faced a good deal of risk, including the possibility of "protracted litigation against very good litigators" and the risk of "not be[ing] paid at all." [2]

---

1. Similarly, although the Majors argue that class counsel's legal and factual investigation prior to settlement was inadequate, there was sufficient evidence in the record to support the district court's conclusion to the contrary.

2. In suggesting that significantly less risk was involved here than in *Vizcaino,* because "here the risk was mainly of being litigated to death, not of losing," the dissent ignores the district court's finding that class counsel ran the risk

The Majors next argue that, contrary to the district court's finding, class counsel did not procure nonmonetary benefits for the class. Defendants stated in a declaration, however, that they changed their licensing practices after class counsel filed suit. In considering this circumstance, the district court reasonably found that class counsel's efforts led Defendants to make changes that will prevent future copyright infringement.

The Majors also argue that the district court abused its discretion by awarding a percentage based fee which, when compared to a lodestar multiplier, was excessive. We disagree. Based on class counsel's total hours, the lodestar multiplier was approximately 6.85.[3] Although this multiplier is higher than those in many common fund cases, see Vizcaino, 290 F.3d at 1051 n. 6, it still falls well within the range of multipliers that courts have allowed. See id. at 1052 app. (citing cases with comparable or higher multipliers); see also id. at 1050 & n. 5 (noting that, while "in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable," class counsel should not "necessarily receive a lesser fee for settling a case quickly").

■ Lastly, the Majors argue that the district court abused its discretion in awarding attorneys' fees to class counsel from the Majors' portion of the settlement fund, because class counsel violated their ethical duty to the Majors by simultaneously representing other parties in unrelated litigation against some of the companies within the Majors. We need not decide whether class counsel violated any ethical duty to the Majors, because the Majors waived any objection they might have had by not raising the alleged ethical violations (in this case or any other case) until the issue of attorneys' fees arose.

In sum, we hold that the district court did not abuse its discretion in awarding attorneys' fees to class counsel. The district court did not commit any legal error or make any clearly erroneous factual findings in awarding class counsel 25 percent of the initial $25.4 million settlement, an amount which was reasonable in light of all the relevant circumstances.

**AFFIRMED.**

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent.

We review the attorneys' fees awarded to class counsel for abuse of discretion.[1]

Defendants used copyrighted music in television soap operas without permission. After successfully suing on behalf of an individual, class counsel brought a class action on behalf of all the other copyright holders. There was no serious question about liability, and damages were subject to a statutory minimum per use.[2] The practical risk, as described by the district

---

of not being paid at all. In particular, Defendants had alleged defenses that might have made class certification impossible, and the Majors had the capacity to preclude relief for the other class plaintiffs by opting out of any settlement agreement. Consequently, class counsel faced two reasonably possible scenarios in which they would effectively "lose" and not recover any attorneys' fees.

**3.** According to the dissent, the district court should have counted only the hours class

counsel spent in reaching the initial settlement agreement, not any subsequent hours, which results in a lodestar multiplier of 11.4. The dissent, however, provides no legal support for this position.

**1.** Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1046 (9th Cir.2002).

**2.** 17 U.S.C. § 504(c)(1) (establishing statutory minimum of $750 per infringing use).

court, was not losing, but rather "protracted litigation against very good litigators."

The risk did not materialize. With no depositions, no motions to dismiss or for summary judgment, no opposition to class certification, and no trial, class counsel got defendants' agreement to a $25.4 million settlement. That is not to say that counsel did not have to do a great deal of very sophisticated, specialized, and difficult legal work to get the settlement. They did. At rates for attorneys ranging from $275 to $600 an hour, and for non-lawyers from $130 to $175 an hour, at that point their time was worth about $554,000.

But the "major" music companies that owned 85% of the music at stake in the litigation were not satisfied with the $25.4 million settlement. They objected to the settlement. With no depositions, contested motions, or trial, they got it more than doubled, to $65 million. They went through a two day mediation with the defendants in which class counsel had no substantial role. Their total billings came to something over $900,000, for obtaining the additional $40 million.[3]

I cannot agree with the majority that the district court was within its discretion to award class counsel over $6 million, basically for obtaining the rejected $25 million settlement. The majority relies heavily on *Vizcaino v. Microsoft*, where we held that an award of 28% of the settlement, 3.65 times the "lodestar" amount (hours times rates) was not an abuse of discretion, because class counsel achieved "'exceptional results for the class.'"[4] By contrast, in this case class counsel left $40 million on the table. In *Vizcaino*, the case was "extremely risky."[5] By contrast, here the risk was mainly of being litigated to death, not of losing.[6] In *Vizcaino*, the litigation was bitterly contested for eleven years, through dismissal, appeal, en banc, remand, class certification, and mandamus. By contrast, in this case litigation was minimal.

In the case at bar, the fee award is 25% of the $25 million settlement class counsel negotiated before the objectors got it set aside. While 25% of a common fund is a "starting point," 25% may be "inappropriate," requiring the court to consider "all the circumstances."[7] A 25% contingent fee is one thing in a $900,000 personal injury case, and quite another when the percentage is applied to $25 million.[8] And

---

3. "While 'comparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party ... does not necessarily indicate whether the hours expended by the party seeking fees were excessive' because numerous factors can cause the prevailing party to have spent more time than the losing party, such a comparison is a useful guide in evaluating the appropriateness of time claimed. If the time claimed by the prevailing party is of a substantially greater magnitude than what the other side spent, that often indicates that too much time is claimed. Litigation has something of the tennis game, something of war, to it; if one side hits the ball, or shoots heavy artillery, the other side necessarily spends time hitting the ball or shooting heavy artillery back." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004).

4. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir.2002) (quoting *Vizcaino v. Microsoft Corp.*, 142 F.Supp.2d 1299, 1303 (W.D.Wa.2001)).

5. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir.2002).

6. The majority argues that class counsel faced a significant risk of "not be[ing] paid at all." By "not being paid at all," the majority does not mean not being paid at all, it means being paid perhaps a million dollars for representing 15% of the class if the majors opted out.

7. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir.2002).

8. *Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1297 (9th Cir.1994) (holding "a court must consider the fund's size in light of

quite another indeed, where the $25 million has been rejected as inadequate. If the district court applied the 3.65 multiplier approved in *Vizcaino* to class counsel's time and rates, class counsel would receive 3.65 times the lodestar amount of $554,000, or a fee of about $2 million. That might arguably have been a reasonable approach, but it was not used.

Class counsel suggest the lodestar amount should be $926,000, the total value of all the time they spent on this case. But that is troublesome because they spent $372,000 of that amount defending the inadequate $25 million settlement and supporting their fee application, not on getting the class money. I cannot justify awarding millions of dollars to class counsel for their efforts adverse to the class. The majority itself provides no legal authority to support the argument that class counsel should be awarded a fee for obtaining and defending a low-ball settlement that was rejected and claiming attorneys fees on the much higher settlement obtained by other lawyers.

Even if the appropriate "lodestar" amount were $926,000, the case had been as hotly contested and risky as *Vizcaino,* and class counsel had produced results as exceptional as those in *Vizcaino,* the multiplier approved in *Vizcaino* would yield about $3.4 million, a far cry from the $6.35 million awarded by the district court. To paraphrase Everett Dirksen, $3 million extra here, $4 million there, and pretty soon you're talking about real money. Class counsel put in around a half million dollars worth of time and settled, leaving $40 million on the table. Giving them six million dollars of the class's money, as the district court did, strikes me as an abuse of discretion.

the circumstances of the particular case" when determining the percentage of the fund awarded as a contingent fee).

