301 F.3d 1115
 Dwight E. WININGER, on behalf of himself and all others similarly situated; Charlene E. Sutherland; Gary T. Charlebois; Plaintiffs-Appellees,
Joel M. Boyden; M. Frances Donovan; Charles F. Odenbach; Pedro P. Ponce; Randy Price; John Pullen; Gregory Stoia, Intervenors-Appellants,
v.
SI MANAGEMENT L.P., a limited partnership, Defendant.
Dwight E. Wininger, Charlene E. Sutherland; Gary T. Charlebois, on behalf of themselves and all others similarly situated; Plaintiffs-Appellants,
Joel M. Boyden; M. Frances Donovan; Charles F. Odenbach; Pedro P. Ponce; Randy Price; John Pullen; Gregory Stoia, Intervenors-Appellees,
v.
SI Management L.P., a limited partnership, Defendant.
Dwight E. Wininger, on behalf of himself and all others similarly situated; Charlene E. Sutherland; Gary T. Charlebois; Plaintiffs-Appellees,
Spiegel Liao & Kagay; Appellant,
Joel M. Boyden; M. Frances Donovan; Charles F. Odenbach; Pedro P. Ponce; Randy Price; John Pullen; Gregory Stoia, Intervenors-Appellants,
v.
SI Management L.P., a limited partnership, Defendant.
 No. 00-15143.
 No. 00-15298.
 No. 00-16892.
 No. 01-1536.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 10, 2002.
 Filed August 27, 2002.
 
 COPYRIGHT MATERIAL OMITTED Charles M. Kagay, Spiegel, Liao & Kagay, San Francisco, California, for the interventors-appellants/appellees.
 Craig B. Smith, Smith, Katzenstein & Furlow, Wilmington, Delaware; Fred H. Altshuler, Altshuler, Berzon, Nussbaum, Rubin & Demain, San Francisco, California, for the plaintiffs-appellees/appellants.
 Appeal from the United States District Court for the Northern District of California; Claudia Wilken, District Judge, Presiding. D.C. No. CV-97-01622-CW.
 Before LAY,* FERGUSON and TALLMAN, Circuit Judges.
 OPINION
 LAY, Circuit Judge:
 
 
 1
 These appeals arise from a class action relating to Synthetic Industries, L.P. (the Partnership), a limited partnership formed to own the capital stock of Synthetic Industries, Inc. (the Company).[1] The dispute relates primarily to attorneys' fees awarded by the district court to the Plaintiff class and to the class members objecting to those fees. The appeal was initiated by the objectors.
 
 
 2
 In 1993, the Company's directors and officers acquired the Partnership's general partner and at all times relevant to this case, the general partner of the partnership and the management of the Company were the same. In August 1996, the general partner sent the limited partners notice of a plan to liquidate the Partnership's common stock in the Company through an initial public offering (the 1996 Plan). Plaintiffs' counsel, on behalf of certain limited partners, sent a letter objecting to the proposed sale and undertook efforts to comply with the partnership agreement's procedures for calling a meeting to vote on the 1996 Plan. After complying with those procedures and obtaining signed meeting request forms from nearly a third of the approximately 1900 limited partners, Plaintiffs' counsel sent a letter to the general partner asking it to call a meeting of all partners for the purpose of voting on the 1996 Plan. On September 10, 1996, the general partner wrote a letter withdrawing the 1996 Plan and indicating it had decided to generate capital through the issuance of Company stock, which did not require Partnership action. There was never any litigation over the 1996 Plan.
 
 
 3
 In March 1997, the general partner sent a letter to the limited partners announcing and outlining a plan to dissolve the Partnership (the 1997 Plan). In response, Plaintiffs brought suit in the United States District Court for the Northern District of California alleging violations of federal securities laws and regulations governing proxy solicitations. In August 1997, the district court denied Plaintiffs' motion for a preliminary injunction due to a weak showing of harm and the possibility that an injunction might distort the decision-making process concerning the 1997 Plan. By contrast, in October 1997, the Delaware Chancery Court granted a similar motion for a preliminary injunction brought by Plaintiffs in related litigation. That injunction did not prevent the limited partners from voting on the 1997 Plan. Instead, it enjoined implementation of the 1997 Plan in the event it was approved. Wininger v. SI Mgmt. L.P., CA. No. 15538 (Del.Ch. Oct. 23, 1997) (ruling of the court on plaintiff's motion for preliminary injunction) (Del.Ch. Oct. 27, 1997) (Order).
 
 
 4
 In November 1997, the 1997 Plan was approved by approximately 70% of the limited partnership interests with only 13.53% of the interests voting against it. Six months later, however, the Delaware Supreme Court affirmed the Chancery Court's injunction against the 1997 Plan. SI Mgmt. L.P. v. Wininger, 707 A.2d 37, 44 (Del.1998). As a result, Defendant withdrew the 1997 Plan, and the parties subsequently entered into settlement negotiations in May 1998. In April 1999, the district court granted the Plaintiffs' motion for preliminary approval of the settlement and class certification for settlement purposes. Notice was then sent to the class members (comprised of all limited partners) explaining the terms of the settlement and the scheme by which Plaintiffs' counsel would seek fees and costs (in lieu of pursuing the 25% fee agreements they had executed with a significant number of the limited partners).
 
 
 5
 On May 11, 1999, Plaintiffs' counsel petitioned the district court for attorneys' fees and costs. Counsel requested 18% of the benefit they believed they conferred on the class as a result of their role in stopping the 1996 and 1997 Plans. They argued that under the 1996 Plan, the Partnership would have received only $13 per share. Plaintiffs' counsel further claimed the 1997 Plan could not have been implemented because it was unlawful and even if it could have been implemented, it would not have yielded a control premium. They claimed the settlement plan would maximize the value to investors and that 18% was a "conservative" percentage for providing that benefit.
 
 
 6
 On May 14, 1999, Randy Price and several other limited partners (the Price Objectors) filed objections to Plaintiffs' counsels' fee petition. They argued Plaintiffs' counsel had actually injured the class members and requested the court to allow the settlement to proceed before awarding fees. On May 24, 1999, a final judgment was entered approving the settlement. In July 1999, the district court granted the Price Objectors' motion to intervene in the fee proceedings, and found Plaintiffs' counsel "[were] not barred from recovering [attorneys'] fees expended in blocking the 1996 Plan even though the events occurred prior to the advent of the litigation over the 1997 Plan." Wininger v. SI Mgmt. L.P., No. C 97-01622 CW at 9 (N.D.Cal. Dec. 30, 1999) (order awarding Plaintiff's counsel attorneys' fees and costs) (hereinafter Order of Dec. 30, 1999). In a subsequent order, the court found Plaintiffs' counsel responsible for stopping the implementation of the 1996 Plan.
 
 
 7
 The settlement-induced sale ultimately generated $33 per share for the Partnership. The court found the 1996 Plan would have yielded approximately $13 per share. It found the 1997 Plan, however, would have resulted in a yield of approximately $30 per share. "Thus, it appears that the Limited Partners would have been able to obtain, under the 1997 Plan, amounts close to the result of the settlement and sale." Order of Dec. 30, 1999 at 16. Although the district court determined Plaintiffs' counsel had failed to show that stopping the 1997 Plan provided a net benefit to the class of limited partners, it was unwilling to completely deny Plaintiffs' counsels' attorneys' fees altogether. Rather, in return for their work opposing the 1996 Plan, the court awarded Plaintiffs' counsel 6% of the difference between the $13 share price that would have been obtained under the 1996 Plan and the $33 share price ultimately generated by the sale.[2] The court concluded:
 
 
 8
 This percentage provides an adequate reward to Plaintiff's counsel for the expense, time and risk incurred in accepting this representation, and for the benefit conferred on the Limited Partners. At the same time, however, it does not unduly reward Plaintiff's counsel for the happenstance of the Company's significant increase in value. And, it takes into account the fact that Plaintiff has not proved that a net benefit was conferred on the Limited Partners by his opposition to the 1997 Plan.
 
 
 9
 Order of Dec. 30, 1999 at 18-19. Accordingly, the district court awarded Plaintiffs' counsel $6,839,032.80 in attorneys' fees and costs of $287,240.31.
 
 
 10
 Counsel for the Price Objectors (Price Counsel) then petitioned for attorneys' fees and costs for (in large part) successfully opposing Plaintiffs' counsels' fee claim. Price Counsel requested $2,188,490.00 (16% of the approximately $13.7 million by which the court had reduced Plaintiffs' counsels' fee claim). Although the district court decided to award attorneys' fees to Price Counsel, it did so on a lodestar basis. Furthermore, it limited the award to hours devoted specifically to opposing Plaintiffs' counsels' fee petition and declined to award a results or risk multiplier. Price Counsel were awarded $154,519.75 in fees and $2,346.87 in costs.
 
 
 11
 Four basic issues are raised by the appeal and cross-appeal. The first is whether the district court had jurisdiction to award fees to Plaintiffs' counsel for their work in opposing the 1996 Plan to liquidate the Partnership's stock. Second, Price Objectors challenge the district court's refusal to disqualify Plaintiffs' counsel by reason of an alleged conflict of interest. The third issue relates to the reasonableness of the fee award provided to Plaintiffs' counsel. Finally, a challenge is made to the reasonableness of the district court's award of fees to the Price Objectors for the work opposing the fee award to Plaintiffs' counsel. We discuss these issues seriatim.
 
 I.
 
 12
 
 Did the District Court Have Jurisdiction to Award Attorneys' Fees for Work Relating to the 1996 Plan?
 
 
 
 13
 The district court had jurisdiction over the underlying securities class action pursuant to 15 U.S.C. § 78aa. Although there is no dispute that the district court had jurisdiction over the petitions for attorneys' fees brought by the parties as they relate to litigation over the 1997 Plan, the parties disagree as to whether or not the court had the jurisdiction to award fees for work pertaining to the 1996 Plan.
 
 
 14
 Absent statutory or contractual authorization, the allowance of attorneys' fees is disfavored. Hall v. Cole, 412 U.S. 1, 4, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Federal courts, however, have the power to award attorneys' fees "in the exercise of their equitable powers." Id. at 5, 93 S.Ct. 1943. For example, a court may award attorneys' fees to a prevailing party as a means of punishing an opponent who acted in bad faith. Id. Similarly, in order to prevent unjust enrichment, federal courts have the power to award attorneys' fees when "successful litigation confers `a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" Id. (quoting Mills v. Electric Auto-Lite Co., 396 U.S. 375, 393-94, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)); accord Kinney v. Int'l Bhd. of Elec. Workers, 939 F.2d 690, 692 (9th Cir.1991); Reiser v. Del Monte Props. Co., 605 F.2d 1135, 1138 (9th Cir.1979). "Jurisdiction over the fund involved in the litigation allows a court to ... assess[] attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).
 
 
 15
 In the present case, settlement of the underlying class action suit has created a fund for the class of limited partners over which the district court had jurisdiction. See Angoff v. Goldfine, 270 F.2d 185, 186 (1st Cir.1959); see also Chemical Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.), 19 F.3d 1291, 1294 (9th Cir.1994) (hereinafter WPPSSS). The Price Objectors claim the work undertaken by Plaintiffs' counsel relating to the 1996 Plan produced no litigation and was therefore not within the jurisdiction of the district court. The district court initially agreed, but found the reasoning in Blau v. Rayette-Faberge, Inc., 389 F.2d 469, 474 (2d Cir.1968), supported an award of attorneys' fees for time spent contesting the 1996 Plan. Wininger v. SI Mgmt. L.P., No. C 97-01622 CW at 5-6 (N.D.Cal. July 22, 1999) (order for further briefing on propriety of awarding fees for prelitigation services and granting Price Objectors' motion to intervene). We have no occasion to consider the appropriateness of applying Blau in the present case, however, because we hold that jurisdiction over the settlement fund, in combination with the federal court's broad powers of equity, was sufficient to allow an award of fees relating to the 1996 Plan.
 
 
 16
 The Supreme Court has summarized the development of the common fund or common benefit doctrine as follows:
 
 
 17
 Since the decisions in Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1881), and Central Railroad & Banking Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.
 
 
 18
 Boeing, 444 U.S. at 478, 100 S.Ct. 745. As noted above, jurisdiction over a fund allows for the district court to spread the costs of the litigation among the recipients of the common benefit. Id.; see also Vincent v. Hughes Air West, Inc., 557 F.2d 759, 774 n. 15 (9th Cir.1977) (stating that either "control over a fund or jurisdiction over the parties" is required in addition to "a finding of benefit-in-fact") (emphasis added). For instance, in Angoff, the First Circuit held the district court erred in refusing to allow attorneys' fees arising from a separate proceeding in state court when it "produced a benefit to the corporation on behalf of which the main action was brought." 270 F.2d at 190; see also Jenkins v. Missouri, 862 F.2d 677, 678(8th Cir.1988) (allowing fees for political activities pursued as a means of funding a desegregation remedy); Donovan v. CSEA Local Union 1000, 784 F.2d 98, 103-104 (2d Cir.1986) (awarding fees for activity undertaken prior to the initiation of a Department of Labor Action, but assisting in the ultimate vindication of union members' rights). We are aware of no case restricting a district court's equitable powers to award attorneys' fees to the litigation directly before the court.[3]
 
 
 19
 In the present case, the settlement agreement encompassed the 1996 Plan by releasing the Defendant from any liability arising therefrom. Moreover, the district court found that "Plaintiff's counsel prevented the 1996 Plan from being implemented and thereby enabled the Limited Partners to achieve a significantly greater return on their investment." Order of Dec. 30, 1999 at 18. In In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 982 F.2d 603 (1st Cir.1992), the First Circuit found, inter alia, the following two characteristics to be typical of common fund cases: (1) "ease in tracking the benefit flow," and (2) "the ability to trace benefits with enough accuracy that, in the end, the flow chart inspires confidence." Id. at 607. In this case, the district court has traced the benefits flowing from the Plaintiffs' counsels' work opposing the 1996 Plan, and we are confident the result is accurate. Therefore, because the district court had jurisdiction over the resulting fund, it was within its equitable power to award fees for work that helped create the fund, even though the fees compensated for work done outside the strict confines of the litigation immediately before the court.
 
 II.
 
 20
 
 Should Plaintiffs' Counsel Have Been Disqualified for Conflict of Interest?
 
 
 
 21
 The Price Objectors next argue the district court should not have reached the question of attorneys' fees because a conflict of interest should have disqualified Plaintiffs' counsel from proceeding with the lawsuit in the first place. The motion to disqualify was denied by the district court early in the litigation. The district court found that because the 1997 Plan had been withdrawn, the issue was moot. A determination of mootness is reviewed de novo. Di Giorgio v. Lee, 134 F.3d 971, 974 (9th Cir.1998). California law controls whether an ethical violation occurred. Image Technical Serv., Inc. v. Eastman Kodak Co., 136 F.3d 1354, 1357 (9th Cir.1998) (citing N.D. Cal. Local Rule 110-3).
 
 
 22
 The Price Objectors assert Plaintiffs' counsel violated either the rule governing concurrent representation or the rule governing prior representation, or both. See Cal. R. Prof. Resp. 3-310(C), 3-310(E). They argue disqualification was mandatory under these rules. In addition, they suggest the need for disqualification can be demonstrated by the fact that the continued representation harmed the limited partners: by causing the 1997 Plan to be withdrawn, which depressed the value of their shares, and by allowing Plaintiffs' counsel to collect fees from the common fund ultimately obtained through the settlement. Price Objectors request that this court follow Piambino v. Bailey, 757 F.2d 1112 (11th Cir.1985), where the Eleventh Circuit required plaintiffs' counsel to reimburse the fund. Id. at 1146. In the present case, such action is unnecessary because the claim for disqualification has no merit.
 
 
 23
 First and most importantly, the question of whether there is an ethical conflict forms part of the class certification question. In re Fine Paper Antitrust Litig., 617 F.2d 22, 27(3d Cir.1980). When the district court certified the settlement class in May 1999, it necessarily determined Plaintiffs' counsel could adequately represent the class members. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n. 20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); see also Fed.R.Civ.P. 23(a). The Price Objectors failed to appeal the order approving the settlement class; therefore this court has no jurisdiction to consider the question. Cf. Lockary v. Kayfetz, 917 F.2d 1150, 1157 (9th Cir.1990) (holding the appellants' failure to properly appeal a grant of legislative immunity from a preceding decision precludes review).[4] Furthermore, since the Price Objectors did not object to liquidation of the Partnership, they cannot now claim they were harmed by the settlement or that the litigation surrounding the settlement was adverse to their interests. Thus, the district court was correct in finding the issue moot upon withdrawal of the 1997 Plan.[5]
 
 III.
 
 24
 
 Plaintiffs' Counsels' Award of Attorneys' Fees
 
 
 
 25
 When deciding the proper award of attorneys' fees for Plaintiffs' counsel, the district court made the following findings: (1) Plaintiffs' counsels' success in stopping the 1997 Plan did not confer a benefit on the class because the limited partners could have received approximately $30 per share under that Plan; (2) the difference between the eventual sale price (as well as the price anticipated under the 1997 Plan) was the result of investment gains rather than the work undertaken by Plaintiffs' counsel; (3) absent the work of the Plaintiffs' counsel in 1996, the Partnership would not have received any more than $13 per share; and (4) the work undertaken by Plaintiffs' counsel in relation to the entire dispute caused them to incur a lodestar in excess of $2 million. From these facts, the district court determined it was appropriate to award 6% of the difference between the $13 per share the 1996 Plan would have generated and the $33 per share the settlement sale actually achieved.
 
 
 26
 Both the Price Objectors and Plaintiffs' counsel contest the amount of fees and costs awarded to Plaintiffs' counsel. The Price Objectors first claim the district court erred when it awarded attorneys' fees based on a percentage of the common fund because, they contend, there was no common fund or benefit. The Price Objectors further argue the award of attorneys' fees was unreasonable because of the disparity between the 250 hours spent contesting the 1996 Plan and the total award of $7 million.[6] In their cross-appeal, Plaintiffs' counsel argue the award of attorneys' fees was too low. They contend the district court's 6% of the fund award violated this court's decision in Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268 (9th Cir.1989), by deviating from the 25% bench-mark without a reasonable explanation. Plaintiffs' counsel claim the settlement resulted in a substantially greater benefit for the class of limited partners than the 1997 Plan would have, thus justifying a larger percentage of the fund as attorneys' fees.[7]
 
 
 27
 In WPPSSS, we made it clear that "no presumption in favor of either the percentage or the lodestar method encumbers the district court's discretion to choose one or the other." 19 F.3d at 1296. That case, by rejecting the claim that a percentage of the fund award should be mandated in common fund cases, reaffirmed our holding in Florida v. Dunne, 915 F.2d 542, 545 (9th Cir.1990), that the fee award need only "be reasonable under the circumstances." We review for abuse of discretion the district court's award of attorneys' fees. Graulty, 886 F.2d at 270.
 
 
 28
 The district court found the increase in the value of the shares "is attributable not to the efforts of Plaintiff's counsel, but rather to the increase in value of the Company after 1996." Order of Dec. 30, 1999 at 17. The district court conceded this was different than a true common fund case where the fund itself comes into existence solely through the efforts of Plaintiffs' counsel. See Graulty, 886 F.2d at 271. Nonetheless, the district court was convinced that Plaintiffs' counsel should be awarded fees for preventing the 1996 Plan from being implemented. The Price Objectors argue this was error because, without a common fund to gauge the fee against, the award of common fund fees amounted to speculation. The Price Objectors, however, go too far in claiming there was no common fund at all. In Vincent, we held the "concept of `fund' is flexible, and it is now settled that a money judgment or even a settlement can serve as a fund. What is crucial is that the court can legitimately exercise authority or control over the asset." 557 F.2d at 770 (internal citations omitted). As we have already stated, the district court had jurisdiction over the fund generated by the settlement. The court was correct, though, to point out that the entire fund was not brought about solely through the efforts of Plaintiffs' counsel. Unlike Graulty, here it is impossible to determine with any confidence what portion of the fee is attributable to the efforts of Plaintiffs' counsels' successful opposition of the 1996 Plan. This case is therefore like Cooperstock v. Pennwalt Corp., 820 F.Supp. 921 (E.D.Pa.1993), where the court found "the 12830 benefit conferred ... [was] unquantifiable" in large part because the plaintiffs could "only be partly credited with conferring the benefit achieved." Id. at 926. Here, as in Cooperstock, "awarding a fee based on a percentage of the monetary fund would be inappropriate," id., and by doing so, we hold the district court awarded Plaintiffs' counsel a fee that was unreasonable given the circumstances.[8]
 
 
 29
 On cross-appeal, Plaintiffs' counsel argue the district court's finding that the settlement conferred no benefit on the class vis-a-vis the 1997 Plan is without any factual support in the record, and therefore constitutes an abuse of discretion. In re Hill, 775 F.2d 1037, 1040 (9th Cir.1985). Plaintiffs' counsel focus primarily on the testimony of their expert, Gilbert E. Matthews. He explained that the $30 per share high achieved immediately before the 1997 Plan was enjoined was the result of trading on very low volume. He opined that it was highly unlikely the 1997 sale could have generated anything higher than $25 per share. After commissions and fees, a sale at $25 per share would yield approximately $22.75 per share. Plaintiffs' counsel, therefore, conclude the settlement offered something in the realm of a $10 per share benefit over the 1997 Plan. Plaintiffs' counsel also argue there is no evidence that the 1997 litigation depressed the stock price. They note that after the 1997 Plan was withdrawn, the shares began trading at the same price range they traded at prior to the Plan's proposal. Plaintiffs' counsel suggest this evidence demonstrates the $33 per share price represented a significant control premium. They also argue the district court ignored other benefits of the settlement, such as the fact that transaction costs were picked up by the purchaser, Investcorp.
 
 
 30
 We are not convinced that the district court's findings with respect to the 1997 Plan are clearly erroneous. The party petitioning for attorneys' fees necessarily bears the burden of persuasion on the elements of that claim. See WPPSSS, 19 F.3d at 1305-06. The district court's findings were based on objective evidence, such as weekly market data for the Company's stock. This evidence demonstrates a steady rise in stock price after the announcement of the 1997 Plan. The stock rose to approximately $30 per share shortly before the 1997 Plan was withdrawn. When, as here, the district court's findings are based on conflicting evidence, we hesitate to disturb them on appeal. Coleman Co. v. Holly Mfg. Co., 269 F.2d 660, 665 (9th Cir.1959). Therefore, we cannot say the district court's finding that the Plaintiffs' counsel failed to meet their burden of proof regarding the 1997 Plan was clearly erroneous. See Los Angeles News Serv. v. Reuters Television Intl. Ltd., 149 F.3d 987, 996 (9th Cir.1998).[9]
 
 
 31
 Accordingly, we remand to the district court the Plaintiffs' counsels' fee award. On remand, the district court is instructed to award Plaintiffs' counsel fees computed using the lodestar methodology for work undertaken in opposition to the 1996 Plan. Similarly, the district court must only allow costs arising from the opposition of the 1996 Plan.
 
 IV.
 
 Price Counsel's Award of Attorneys' Fees
 
 
 32
 Finally, Price Counsel have appealed the district court's determination of their fee award for their efforts disputing Plaintiffs' counsels' fee request. They assert the district court erred in its lodestar calculation by excluding a majority of their time and by failing to apply a risk multiplier. We disagree.
 
 
 33
 In Friend v. Kolodzieczak, 72 F.3d 1386 (9th Cir.1995), we reaffirmed the rule that to calculate the lodestar amount, the district court should "multipl[y] the number of hours reasonably spent in achieving the results obtained by a reasonable hourly rate." Id. at 1389 (emphasis added). Here, Price Counsel submitted over 1300 hours spent "protecting the Limited Partners" from Plaintiffs' counsel. In its May 22, 2000, and September 6, 2000, orders, the district court set forth its careful analysis explaining that over half of Price Counsel's claimed hours were expended in unsuccessful efforts unrelated to their success challenging Plaintiffs' counsels' fee request and, thus, Price Counsel were entitled to no fees for those hours. We find no error in this analysis and reject Price Counsel's demand that they receive compensation for a higher number of hours.
 
 
 34
 If anything, the district court should have reduced the number of hours further. In WPPSSS, we reaffirmed the widely recognized rule that "[t]he party petitioning for attorneys' fees `bears the burden of submitting detailed time records justifying the hours claimed to have been expended.'" 19 F.3d at 1305 (quoting Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir.1986)). Here, the firm of Bode & Beckman claimed 344.1 hours, which the district court properly reduced to remove hours expended on appeal. Of the remaining hours, however, the district court noted that "several entries between April, 1999 and May, 2000 appear to involve work unrelated to [Plaintiffs'] counsel's fee petition." Wininger v. SI Mgmt. L.P., No. C 97-01622 CW at 17 (N.D. Cal. Sep. 6, 2000) (order denying Price Counsel's motion for leave to file a motion for reconsideration and awarding Price Counsel fees and costs) (hereinafter Order of Sept. 6, 2000). The court suggested that the firm could have been "more helpful" if it had been more specific. Nonetheless, the court credited the lead attorney's representation that all claimed hours were spent opposing Plaintiffs' counsels' fee petition. Giving counsel the benefit of the doubt even in light of apparently improperly claimed hours, however, runs counter to the rule in Chalmers that the burden to submit detailed records justifying hours reasonably expended falls upon the claiming attorneys. The district court should have required greater specificity or reduced the hours further by those the firm had not proved to have been reasonably expended. Similar concerns arise concerning the hours claimed by Spiegel, Liao & Kagay, which included all the hours worked on the case between April 1999 and February 2000 and submissions justified simply as "Resps suppl brief" and "Resp brief." These descriptions patently fall short of the requirement of Chalmers. Cf. Leroy v. City of Houston, 906 F.2d 1068, 1080 (5th Cir.1990).
 
 
 35
 The district court also did not err by denying a risk multiplier. The court based its decision on "the limited nature of [Price Counsel's] work, its relative lack of difficulty, and [their only] partial success," all relevant factors to determining the propriety of a multiplier. Order of Sept. 6, 2000 at 11. Nonetheless, Price Counsel assert entitlement to a multiplier because they ran the risk of nonpayment and because of a large discrepancy between the $2 million "benchmark" counsel requested and the $154,519 awarded by the court. We disagree.
 
 
 36
 Price Counsel's argument that it shouldered a significant risk of nonpayment is unavailing. Unlike many common fund cases where counsel undertake their efforts knowing their clients cannot pay their fees and, thus, compensation depends on success, Price Counsel were hired by discernible clients with the means to pay for services rendered. Here, Price Counsel provided a service to the class, a fact recognized by the district court's fee award. Cf. Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1329 (9th Cir. 1999); Class Plaintiffs v. Jaffe & Schlesinger, P.A., 19 F.3d 1306, 1308(9th Cir.1994) (citing Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp., 540 F.2d 102, 112 (3d Cir.1976)). But Price Counsel have not demonstrated that they expected to receive nothing even if they ultimately failed to provide any benefit through their efforts. Indeed, they regularly sent bills to Price Financial Services, and their submissions to the district court indicate they had received at least $67,800 in payments from their clients.
 
 
 37
 The district court also did not abuse its discretion by discounting Price Counsel's claimed percentage benchmark. As the district court noted, in Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301 (9th Cir.1990), we held that "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." Id. at 1311. We then suggested that length and complexity of litigation and degree of success could be considered relevant factors. Id. Here, the district court noted that Price Counsel's efforts contesting Plaintiffs' counsel's fee award involved issues of no particular difficulty and required no great time commitment, and that Price Counsel achieved limited success. In light of these findings, with which we agree, Price Counsel's $2 million benchmark was unwarranted. That award would have resulted in an hourly fee of more than $4000 based on the district court's calculation of hours reasonably expended. Applying a multiplier to approximate that benchmark surely would have been excessive. The district court was correct to decline a multiplier.
 
 
 38
 We remand the fee award due Price Counsel to the district court. The district court is directed to recalculate the fee award under the lodestar method in light of this opinion and Price Counsel's burden to establish the reasonableness of hours claimed. The district court also is directed to consider payments already received by Price Counsel from their clients in its calculation; either crediting money received against fees or requiring such payments to be returned as a condition of receiving fees from the fund would be within the district court's discretion.
 
 CONCLUSION
 
 39
 For the forgoing reasons, the district court's opinion is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for redetermination of attorneys' fees and costs. Each party shall pay its own costs of the appeal and cross-appeal.
 
 
 
 Notes:
 
 
 *
 The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 One of the world's leading producers of polypropylene fabrics and fibers for the home furnishing, construction, environmental, recreational, and agricultural industries
 
 
 [2]
 The Partnership tendered 5,699,194 shares of stock, for a total sale price of $188,073,402. If sold at $13 per share, the total price would have been $74,089,522. The actual sale price, less the hypothetical 1996 sale price, amounts to $113,983,880
 
 
 [3]
 The district court found that in the cited cases, where fees were allowed for "non-litigation work," the work was "related to ongoing litigation." The implication is that the cases do not support jurisdiction in the present case because the non-litigation work opposing the 1996 Plan was not directly related to the ongoing litigation opposing the 1997 Plan. We find this distinction unpersuasive. The question presented is whether the district court's equitable jurisdiction allows it to award fees for hours spent working on something other than the present litigation. We hold that it does. The level of relatedness to the ongoing litigation is of less importance than the extent to which the non-litigation work was calculated to — and in fact did — bring about the common fund presently under the district court's controlSee, e.g., Winton v. Amos, 255 U.S. 373, 394-95, 56 Ct.Cl. 472, 41 S.Ct. 342, 65 L.Ed. 684 (1921) (allowing fees in equity for legislative work "substantially instrumental in producing a result beneficial to the class of cestuis que trustent upon whose interests the charge [was] to be imposed").
 
 
 [4]
 Price Objectors claim they adequately preserved the issue for appeal by indicating they intended to contest Plaintiffs' counsels' fee petition. They cite no authority for the proposition that objecting to the merits of the fee claim would allow them to pursue a challenge to class counsels' representation. The fact that class certification was for the limited settlement purposes does not change the fact that the issue was necessarily considered and disposed ofSee Amchem, 521 U.S. at 620, 625-26 n. 20, 117 S.Ct. 2231.
 
 
 [5]
 We also note that disqualification is not required simply because a rift in the class developsSee Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 589 (3d Cir.1999). Unlike the settlement in Piambino, the settlement here was lawful and fair. Thus, there was no material prejudice to the objectors, and the district court's refusal to disqualify Plaintiffs' counsel was harmless error.
 
 
 [6]
 Plaintiffs' counsel claimed they were "advised that over 250 hours of attorney and staff time were expended" and that they incurred "over $40,000 in out-of-pocket expenses." Supp. Declaration aff. Derek G. Howard, May 20, 1999 at ¶ 25
 
 
 [7]
 Plaintiffs' counsel also contend it was error for the district court to find that their work to stop the 1997 Plan provided no benefit to the class based on the hypothetical yield of that Plan. They argue the 1997 Plan was unlawful and, therefore, could not be used to "diminish the benefit" to the Plaintiffs. Plaintiffs' counsel argues that under the doctrine of practical finality, the interlocutory order of the Delaware Supreme Court holding Plaintiffs had made a showing of a likelihood of success on the merits,see SI Mgmt. v. Wininger, 707 A.2d at 38, 42, should be treated as a final determination on the merits for the purposes of issue preclusion. See Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80, 89-90(2d Cir.1961). Therefore, they argue Defendant and Price Objectors should be barred from asserting the legality of the 1997 Plan. See generally 18 Charles Alan Wright, et al., Federal Practice & Procedure § 132.
 The legality of the plan, however, is a red herring. The district court's conclusion did not turn on a determination of the legality of the 1997 Plan, but rather on the fact that the limited partners overwhelmingly supported the Plan. Thus, without the intervention of Plaintiffs' counsel, the 1997 Plan would have been implemented.
 
 
 [8]
 The Price Objectors highlight the disparity between the percentage-based award and the fees the lodestar method would support. This disparity, they argue, demonstrates the percentage-based fee award was "unconscionably high." While we are not convinced the fees rise to the level of unconscionability, we agree with the thrust of the Price Objectors' argument. Plaintiffs' counsel claim they incurred approximately $40,000 in expenses and 250 staff hours fighting the 1996 Plan. Price Objectors note the court awarded Plaintiffs' counsel $287,240 in costs (the claimed costs for the entire representation). They also argue the award of $6,839,032.80 breaks down to somewhere around $27,000 an hour of staff time. This is dramatically higher than even a high-end lodestar award of $1,000 per hour
 
 
 [9]
 Plaintiffs' counsel also contend, based on this court's decision inGraulty, that the district court's deviation from a 25% of the fund "benchmark" was not "accompanied by a reasonable explanation of why the benchmark is unreasonable under the circumstances." 886 F.2d at 273. Essentially, Plaintiffs' counsel argue the district court's explanation that the common fund came into existence through market forces rather than from their effort does not constitute a reasonable explanation under Graulty. Had it not been for the efforts of Plaintiffs' counsel, they argue, the class of limited partners would have remained locked in an illiquid investment or sold their shares for only $13 per share under the 1996 Plan.
 Graulty does not set a floor under which a district court cannot award attorneys' fees in common fund cases, see WPPSSS, 19 F.3d at 1296; Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047, 1052-55 (9th Cir.2002), nor does it require utilization of the percentage of the fund method. WPPSSS, 19 F.3d at 1296. In any event, our conclusion that the 6% fee award was unreasonable under the circumstances necessarily indicates that Plaintiffs' counsels' request for a 25% fee award must be rejected.